*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

Nos. 11-1917/1926/2015/2200

JORDON FORD (11-1917); JASPER PERDUE
(11-1926); TYRONE NATHAN (11-2015);
WILNELL HENRY (11-2200),

*Defendants-Appellants*.

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cr-72—Robert J. Jonker, District Judge.

Argued: November 20, 2013

Decided and Filed: August 5, 2014

Before: MOORE, GIBBONS, and SUTTON, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Gary W. Crim, Dayton, Ohio, for Appellant in 11-1917. Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant in 11-1926. Michael R. Bartish, SPRINGSTEAD & BARTISH, LAW, P.L.L.C., Grand Rapids, Michigan, for Appellant in 11-2015. Timothy J. McKenna, TIMOTHY J. MCKENNA, LLC, Cincinnati, Ohio, for Appellant in 11-2200. Sean C. Maltbie, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Gary W. Crim, Dayton, Ohio, for Appellant in 11-1917. Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant in 11-1926. Michael R. Bartish, SPRINGSTEAD & BARTISH, LAW, P.L.L.C., Grand Rapids, Michigan, for Appellant in 11-2015. Renée Paradis, San Francisco, California, for Appellant in 11-2200. Sean C. Maltbie, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge. This consolidated appeal arises from the convictions and sentencing of Jordon Ford ("Ford"), Jasper Perdue ("Perdue"), Tyrone Nathan ("Nathan"), and Wilnell Henry ("Henry") for crimes arising from their involvement in a conspiracy to commit a series of armed robberies in the Lansing, Michigan area, between February 2009 and October 2009. We address each of their arguments in turn. For the reasons set forth below, we **AFFIRM**.

## I. BACKGROUND

The grand jury returned an indictment against Ford, Perdue, Nathan, and Henry on March 31, 2010. R. 1 (Indictment at 1) (Page ID #1). A superseding indictment was returned on June 30, 2010. Each defendant was charged with one count of conspiracy to commit robbery affecting commerce in violation of 18 U.S.C. § 1951;[1] multiple counts of robbery affecting interstate commerce in violation of 18 U.S.C. §§ 1951 and 2;[2] and multiple counts of possessing and brandishing or discharging a firearm in furtherance of both the conspiracy and a robbery count in violation of 18 U.S.C. §§ 924(c) and 2.[3] R. 77 (Superseding Indictment) (Page ID #129). After a joint trial,

———————————

[1] "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a).

[2] "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2.

[3] "Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–(i) be sentenced to a term of imprisonment of not less than 5 years; (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years." 18 U.S.C. § 924(c)(1)(A).

Ford and Perdue were convicted of all charges.[4] R. 190 (Jury Verdict) (Page ID #642). Ford was sentenced to 1,392 months of imprisonment, R. 255 (Ford Sent. Tr.) (Page ID #2886, 2913), and now appeals his conviction and his sentence. Perdue was sentenced to 1,464 months of imprisonment, R. 256 (Perdue Sent. Tr.) (Page ID #2920, 2943), and now appeals his conviction and his sentence. Defendant Nathan pleaded guilty to conspiracy to commit robbery affecting commerce. R. 129 (Nathan Am. Plea) (Page ID #251). He was sentenced to 168 months of imprisonment, R. 273 (Nathan Sent. Tr.) (Page ID #3053, 3094), and now appeals his sentence. Defendant Henry pleaded guilty to conspiracy to commit robbery affecting commerce. He was sentenced to 150 months of imprisonment, R. 291 (Henry Sent. Tr.) (Page ID #3172, 3201), and now appeals his sentence.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction over the appeals pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II. EVIDENTIARY CLAIMS

Ford and Perdue both challenge the admission of evidence regarding their gang affiliation and the impact of the robbery on a witness to the crime.

Federal Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its

---

"In the case of a second or subsequent conviction under this subsection, the person shall – (i) be sentenced to a term of imprisonment of not less than 25 years; and (ii) if the firearm involved is a machinegun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life." 18 U.S.C. § 924(c)(1)(C).

[4]Both were convicted of Count 1, conspiracy to commit robbery affecting commerce. R. 190 (Jury Verdict at 1) (Page ID #642). Ford was convicted of the following robbery counts: Count 2, Check Into Cash; Count 4, Fox Island Party Store; Count 9, Mario's Market; Count 11, West Saginaw Party Store; and Count 15, Famous Taco Restaurant. *Id.* at 1–7 (Page ID #642–48). He was also convicted of three counts of possessing and brandishing a firearm in furtherance of a crime of violence and two counts of possessing and discharging a firearm in furtherance of a crime of violence. *Id.* at 2–7. Perdue was convicted of the following robbery counts: Count 6, Check Into Cash; Count 7, Hungry Howie's Restaurant; Count 9, Mario's Market; Count 11, West Saginaw Party Store; Count 17, Citgo Gas Station; and Count 19, Mount Hope Party Store. *Id.* at 3–8. He was also convicted of two counts of possessing and brandishing a firearm in furtherance of a crime of violence and three counts of possessing and discharging a firearm in furtherance of a crime of violence. *Id.* at 3–9.

probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice 'does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest decision on an improper basis.'" *United States v. Gibbs*, 182 F.3d 408, 430 (6th Cir. 1999) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)).

We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Fisher*, 648 F.3d 442, 449 (6th Cir. 2011). "[W]e will reverse a district court's evidentiary decisions only where the 'abuse of discretion has caused more than harmless error.'" *Id.* (quoting *United States v. Johnson*, 440 F.3d 832, 847 (6th Cir. 2006)). "Under harmless error analysis, reversal is warranted only if the instruction affected a substantial right of the defendants." *Gibbs*, 182 F.3d at 428 (citing Fed. R. Crim. P. 52(a)).

## A.  Gang Affiliation

Ford and Perdue both argue that the district court abused its discretion by permitting the government to introduce evidence of their affiliation with the Vice Lords gang.[5]  Both filed pre-trial motions in limine asking the court to exclude evidence of Vice Lords membership, arguing that it is not relevant and, if relevant, the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.[6] R.

---

[5]The government introduced evidence of gang affiliation through multiple witnesses. FBI Special Agent Thomas Plantz ("Plantz") testified that Perdue displayed hand signals that represent the Four-Corner Hustlers, a branch of the Vice Lords; wore clothing and oriented his hat in a manner symbolic of the Vice Lords; and has a tattoo on his face with the Vice Lords symbol of a five-pointed star. R. 201 (Trial Tr. at 99–102) (Page ID #996–99). Nathan testified to his and Henry's involvement with the Vice Lords gang. R. 204 (Trial Tr. at 46–47) (Page ID #1673–74). Payne testified that the gang was about "[g]etting what we needed. You know, we needed money. We were going to get it however we had to get it, period," and that one of the ways of getting money was committing robberies. R. 205 (Trial Tr. at 21) (Page ID #1860). Henry testified that he had been a Vice Lord for multiple years; that Ford was formerly a member of the Bloods but became a Vice Lord after he learned about the gang from people at the Fallen Angels studio; and that Perdue was a member of the Four-Corner Hustlers. R. 205 (Trial Tr. at 208–11) (Page ID #2047–50). Kirby testified that Perdue was a gang member and that Perdue's "4CH" tattoos stand for Four-Corner Hustlers. R. 207 (Trial Tr. at 88–91) (Page ID #2359–62)

[6]Because Ford and Perdue objected to the introduction of evidence of Vice Lords gang membership through pre-trial motions in limine, and the district court's ruling on the motion was not "qualified or conditional," they did not need to renew the objection at trial to preserve the issue for appeal.

167 (Ford Mot. in Limine at 1) (Page ID #472); R. 161 (Perdue Mot. in Limine at 1) (Page ID #461).  The district court denied the motion.  R. 200 (Trial Tr. at 12–14) (Page ID #674–76).

Ford and Perdue argue that the evidence of gang affiliation was irrelevant because the co-defendants' relationship was not at issue.  Ford Appellant Br. at 44; Perdue Appellant Br. at 13.  During the pre-trial hearing on the admissibility of the gang evidence, Perdue's counsel conceded the relationship amongst the defendants as "members of a rap group, and they all congregated often at the studio of Mr. Henry." R. 200 (Trial Tr. at 6) (Page ID #668).  Ford and Perdue argue that the gang evidence was highly prejudicial and not probative because the co-conspirators were involved in different gangs, gang affiliation is not an element of robbery, and the leaders of the conspiracy indicated that the Vice Lords gang was not connected to the robberies.[7]

Evidence of gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case, such as in a conspiracy case. *See United States v. Williams*, 158 F. App'x 651, 653–34 (6th Cir. 2005); *Gibbs*, 182 F.3d at 429–30.  However, gang affiliation evidence "is inadmissible if there is no connection between the gang evidence and the charged offense."  *United States v.*

---

*United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).

[7]This argument is based on exchanges at trial with Wilnell Henry and Christopher Wyatt Kirby. The following exchange occurred between Scott Graham, counsel for Ford, and Henry:

> Graham:  Now, I just want to make sure I'm clear about a point about Vice Lords and about Vice Lords as they relate to Fallen Angel and Vice Lords as they relate to the armed robberies that you know to be part of this case.  Being a Vice Lord had nothing to do with those robberies did it?
> Henry:  No, it did not.
> Graham:  They aren't related at all are they?
> Henry:  No.

R. 206 (Trial Tr. at 121–22) (Page ID #2192–93).

> A similar exchange occurred between Donald W. Garthe, counsel for Perdue, and Kirby:
> Garthe:  Now, whatever was happening, whatever was happening that you've testified to about armed robberies, that stuff had nothing to do with Vice Lord activity, did it?
> Kirby:  No, it didn't.
> Garthe:  They were completely separate, weren't they?
> A:  Yes, they were.

R. 207 (Trial Tr. at 139) (Page ID #2410).

*Anderson*, 333 F. App'x 17, 24 (6th Cir. 2009); *see also United States v. Newsom*, 452 F.3d 593, 602–04 (6th Cir. 2006) (holding that evidence of a gang tattoo was not relevant when the sole charge was being a felon in possession of a firearm).  It was not an abuse of discretion for the district court to allow the introduction of evidence of Ford's and Perdue's gang affiliation.  The evidence of gang affiliation is relevant because it demonstrates the relationship amongst the co-conspirators.  Specifically, the evidence furthered the Government's theory that the co-conspirators were a distinct subset of the many people involved in the Fallen Angels record label and that the bond between the subset was their involvement in the Vice Lords.  The probative value of the testimony that Ford and Perdue were involved in the Vice Lords was not outweighed by the danger of unfair prejudice.  Accordingly, we hold that the district court did not abuse its discretion by admitting evidence of Ford's and Perdue's gang affiliation.

**B.  Witness's Reaction to Robbery as Interference with Interstate Commerce**

Ford and Perdue argue that the district court abused its discretion by allowing a robbery witness to testify about how she was impacted by witnessing the Mario's Market robbery.  At trial, when the Assistant United States Attorney asked the witness if the robbery had any effect on her, counsel for Ford objected on the basis of relevance;[8] the court permitted the testimony, stating that "if we don't go too far, it's relevant.  The government has to show interference with commerce, and one way to do that is to indicate the effect it has on people."  R. 202 (Trial Tr. at 118) (Page ID #1268).  The witness proceeded to testify that she was "nervous going into stores, taking my kids into stores.  I didn't know if it would happen again."  *Id.*  Perdue argues that the introduction of this evidence is "especially egregious" because before trial the parties stipulated that the robberies affected interstate commerce.  R. 188 (Stipulation at 1–2) (Page ID #639–40).

---

[8]Perdue did not object.  Typically when a party does not object to evidence at trial, we review the claim for plain error only.  *United States v. Baker*, 458 F.3d 513, 517 (6th Cir. 2006).  However, because it is "'redundant and inefficient to require each defendant in a joint trial to stand up individually and make every objection to preserve each error for appeal,'" *id.* at 518 (quoting *United States v. Pardo*, 636 F.2d 535, 541 (D.C. Cir. 1980)), Ford's objection preserved the issue for Perdue, and so Perdue's claim is not subject to plain-error review.

Ford and Perdue were both charged with multiple counts of conspiracy to commit robbery affecting commerce in violation of 18 U.S.C. § 1951. An element of this offense is interference with interstate commerce. This element is satisfied by a showing of even a *de minimis* effect on interstate commerce. *United States v. Baylor*, 517 F.3d 899, 902 (6th Cir. 2008) (holding that the interstate commerce element was satisfied through evidence that a restaurant that was robbed routinely purchased and used ingredients from other states). However, this witness did not testify that she altered her shopping practices as a result of the robbery—she testified only to her emotional state when entering stores. The government offers no authority to establish that a crime witness's feelings of nervousness when entering stores after witnessing a robbery in a store is relevant to the element of interstate commerce. Although most stores engage in interstate commerce by purchasing items from other states, the government did not introduce any evidence that the stores in which she felt nervous did, in fact, engage in interstate commerce. Evidence is relevant if it has "*any* tendency to make a fact more or less probable than it would be without the evidence," Fed. R. Evid. 401 (emphasis added), but even under this expansive understanding of relevance, the connection of this evidence to the element of interstate commerce is rather attenuated.

Nonetheless, even assuming that introduction of this evidence was in error, we conclude that any error was harmless. "'[A]n error which is not of constitutional dimension is harmless unless it is more probable than not that the error materially affected the verdict.'" *United States v. Davis*, 577 F.3d 660, 670 (6th Cir. 2009) (quoting *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008)). Because Ford and Perdue stipulated that the interference with interstate commerce element was satisfied and because the testimony was not substantially prejudicial or inflammatory, any error in admitting this evidence did not materially affect the verdict. Therefore, the district court did not abuse its discretion by allowing testimony of the effect of the robbery on a witness to that crime.

## III.  CONFRONTATION CLAUSE CLAIMS

Perdue challenges the district court's limitation on his cross-examination of a government witness regarding his exculpatory out-of-court statements as a violation of the Confrontation Clause.  Ford challenges the introduction of non-testifying co-defendant Perdue's out-of-court statement.

### A.  Limitation on Cross-Examination

Perdue argues that the district court abused its discretion by limiting his cross-examination of FBI Special Agent Plantz ("Plantz"), who testified to Perdue's inculpatory out-of-court statements.  Plantz testified that Perdue admitted that he was involved in the Mount Hope robbery, but only as a lookout.  R. 206 (Trial Tr. at 160 (Page ID #2231).  We review for abuse of discretion a challenge to the district court's evidentiary rulings, even on Confrontation Clause grounds.  *United States v. Holden*, 557 F.3d 698, 703 (6th Cir. 2009).  "It is an abuse of discretion for a district court to commit legal error or find clearly erroneous facts."  *Id.*

On cross-examination, Perdue attempted to elicit testimony regarding his exculpatory out-of-court statements, but the district court sustained the government's objections to these questions on the basis of hearsay.  Defense counsel asked Plantz if Perdue had identified an individual in a photo and admitted that it was him; the Assistant U.S. Attorney objected, and the court sustained the objection.  R. 206 (Trial Tr. at 167–68 (Page ID #2238–39).  Defense counsel later asked Plantz, "[Perdue] never admitted to you that he shot that clerk, did he?"  The government objected, and the court again sustained the objection on hearsay grounds.  *Id.* at 170–71 (Page ID #2241–42).  Perdue argues that he should have been allowed to introduce his statements under the Confrontation Clause and the rule of completeness.  Because the statements that Perdue attempted to introduce were hearsay not within any exception, the district court did not abuse its discretion by limiting the scope of Perdue's cross-examination.

Out-of-court statements made by a party-opponent are an exception to the general hearsay rule.  Fed. R. Evid. 801(d)(2).  This exception reflects that "the adversarial

process allows the party-declarant to rebut his or her own admissions by testifying at trial." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005). This hearsay exception does not, however, "extend to a party's attempt to introduce his or her *own* statements through the testimony of other witnesses." *Id.* "'An essential component of the confrontation clause is the accused's right to cross-examine the state's witnesses.'" *United States v. Payne*, 437 F.3d 540, 547–48 (6th Cir. 2006) (quoting *Miskel v. Karnes*, 397 F.3d 446, 452 (6th Cir. 2005)). "'However, the right to cross-examine is not absolute.'" *Id.* at 548 (quoting *United States v. Beverly*, 369 F.3d 516, 535 (6th Cir. 2004), *cert. denied*, 543 U.S. 910 (2004)). Precluding a defendant from eliciting inadmissible hearsay statements does not violate the Confrontation Clause. *See United States v. Ortega*, 203 F.3d 675, 682–83 (9th Cir. 2000). Therefore, the district court's limitation on Perdue's cross-examination did not violate his Confrontation Clause rights and was not an abuse of discretion.

Nor was the district court's limitation on cross-examination an abuse of discretion under the rule of completeness. Perdue argues that once excerpts of his statement came into court, the entirety of the statement needed to be introduced to understand the statements in the proper context. He argues that "[t]he jury was left with the impression that Perdue had partially confessed, when in fact the tenor of the interview was the opposite." Perdue Appellant Br. at 21. "The 'rule of completeness' allows a party to correct a misleading impression created by the introduction of part of a writing or conversation by introducing additional parts of it necessary to put the admitted portions in proper context." *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009). This common-law principle "was codified for written statements in [Federal Rule of Evidence] 106, and . . . extended to oral statements through interpretation of [Federal Rule of Evidence] 611(a)." *Id.* (footnotes omitted). However, the rule of completeness "is not designed to make something admissible that should be excluded." *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982). "Right or wrong, this court has acknowledged that under *Costner*, '[e]xculpatory hearsay may not come in solely on the basis of completeness.'" *United States v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013) (quoting *United States v. Shaver*, 89 F. App'x 529, 533 (6th Cir.

2004)).  Because the exculpatory statements were inadmissible hearsay, the district court did not abuse its discretion under the rule of completeness by limiting Perdue's cross-examination of Plantz.

## B. *Bruton* Claim

Ford argues that introduction into evidence of the statements of his non-testifying co-defendant, Perdue, violated his Confrontation Clause rights under *United States v. Bruton*, 391 U.S. 123 (1968).  In *Bruton*, the Supreme Court held that the Confrontation Clause is violated by the introduction of an incriminating out-of-court statement by a non-testifying co-defendant, even if the court gives a limiting instruction that the jury may consider the statement only against the co-defendant.  *Id.* at 136–37.

Generally, we review de novo Confrontation Clause challenges.  *United States v. Vasilakos*, 508 F.3d 401, 406 (6th Cir. 2007).  However, when a defendant fails to object on Confrontation Clause grounds at trial, we review the claim for plain error.  *United States v. Martinez*, 588 F.3d 301, 313 (6th Cir. 2009).  "Plain error review applies even if the forfeited assignment of error is a constitutional error."  *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004) (citing *United States v. Jones*, 108 F.3d 668, 676 (6th Cir. 1997)).  Before trial, Ford moved to sever his case on the ground that the government's plan to introduce co-defendant Perdue's statement violated *Bruton*.  R. 166 (Ford Mot. to Sever at 1–2) (Page ID #471).  The government identified one portion of the Perdue statement that it believed would implicate Ford and proposed to redact Ford's name when the statement was introduced at trial.  R. 171 (Gov't Response at 6–8) (Page ID #541–53).  The district court agreed that this plan resolved the *Bruton* problem and denied the motion to sever.  R. 177 (Order on Mot. to Sever at 1) (Page ID #618).  Ford did not make any *Bruton* objections when Plantz testified at trial about Perdue's statements.  Because Ford's motion to sever did not identify any specific portions of Perdue's statement that violated *Bruton* and because he did not object at trial to the statements, the government argues that Ford forfeited the *Bruton* claim.  Ford's argument is a bit unclear, but he seems to argue that his motion to sever preserved his claim and that the trial judge indicated that he had addressed the *Bruton* issue before

Plantz testified, so there was no need for Ford to object to the testimony. Ford Appellant Br. at 37–38; Ford Reply Br. at 2.

The general requirement that a defendant must contemporaneously object to the introduction of evidence or forfeit his or her claim "serves to induce the timely raising of claims and objections, which gives the district court the opportunity to consider and resolve them." *Puckett v. United States*, 556 U.S. 129, 134 (2009). A defendant who does not contemporaneously object may not raise the claim of trial error on appellate review unless it is "[a] plain error that affects substantial rights . . ." Fed. R. Crim. P. 52(b). In this circuit, we have recognized some exceptions to the requirement of a contemporaneous objection. A defendant need not make a contemporaneous objection if he or she raised an evidentiary challenge in a motion in limine and the trial court ruled against the defendant in an "an explicit and definitive ruling" that is not "conditioned upon any other circumstances or evidence." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). "However, if the court's ruling is in any way qualified or conditional, the burden is on counsel to raise objection to preserve error." *Id.* This rule recognizes that the efficiency goals of requiring contemporaneous objections are not furthered if the court has already definitively ruled on the evidence at issue.

Our circuit has not decided whether a motion to sever preserves a *Bruton* objection. The circuits to consider this question have split on the answer. *See United States v. Nash*, 482 F.3d 1209, 1218 n.7 (10th Cir. 2007) (holding that a pretrial motion to sever preserved the *Bruton* claim even though defendant did not object to the introduction of the evidence at trial); *United States v. Vega Molina*, 407 F.3d 511, 519–20 (1st Cir. 2005) (holding that a motion to sever preserved the *Bruton* objection when the district court categorically denied the motion to sever because it concluded that the statement was not incriminating); *but see United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007) (reviewing *Bruton* claim for plain error when defense counsel did not contemporaneously object to testimony but did move for severance the next day); *United States v. Jobe*, 101 F.3d 1046, 1068 (5th Cir. 1996) (reviewing *Bruton* claim for plain error where district court denied motion to sever but defendant did not

contemporaneously object to the testimony).  Under the circumstances of this case, we need not wade into this circuit split.

We hold that the introduction of the statement that Ford challenges on appeal does not violate the *Bruton* rule and so does not violate Ford's Confrontation Clause rights.  Ford concedes that Perdue's statement, as it was introduced at trial, did not name Ford.  Ford Appellant Br. at 37.  Ford argues that the *Bruton* problem arose from the fact that Perdue's statement corroborated evidence previously introduced that did implicate Ford.  *Id.* at 40.  However, "*Bruton* does not bar the use of a redacted codefendant's confession 'even if the codefendant's confession becomes incriminating when linked with other evidence adduced at trial.'" *United States v. Cobleigh*, 75 F.3d 242, 248 (6th Cir. 1996) (quoting *United States v. DiCarlantonio*, 870 F.2d 1058, 1062 (6th Cir. 1989)).  Any conclusion by the jury that Perdue's statement implicated Ford might be made only by linking the statement to other evidence.  Introduction of the statement did not, therefore, violate the *Bruton* rule.  The district court did not commit error by allowing the introduction of the statement.

## IV.  *REMMER* CLAIM

Ford argues that the district court abused its discretion by failing to conduct individual *Remmer* hearings after one juror expressed concern about her safety.  We review jury-misconduct claims for an abuse of discretion.  *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008).

After the jury left the courtroom on January 25, the district court informed counsel that it had received a note from a juror indicating safety concerns.[9]  R. 205 (Trial

---

[9]The note stated:

> I have some concerns (fears) about my safety as a juror.  If for some reason there is an unfavorable outcome in the eyes of the defendants, what type of access would they have to our personal information, where we live etc.  We did all introduce ourself [sic] and tell the court what we did.  I stated I was a teacher and the mother of 4.  I didn't think about it at the time but when defendants are staring you down as if they are trying to memorize your face it gets a little scary.  Thank you for your kind advice on this manner [sic].

R. 190-1 (Juror Notes at 2) (Page ID #652).

Tr. at 227) (Page ID #2066).  Counsel for Ford stated that if safety issues had been a topic of discussion amongst the jurors and that "if there's been taint that's gone through the jury, my gut reaction is that we should talk to her privately." *Id.* at 228 (Page ID #2067).  The next day, the district court judge spoke to the juror in the courtroom in the defendant's presence; the juror stated that the safety concerns were shared by other jurors but that her concerns would not affect her ability to make a decision. *Id.* at 13–14 (Page ID #2085–86).  The district judge brought the entire jury in but did not speak individually to any other jurors; instead, he gave a general instruction to send him a note if anybody did not feel they could decide the case based on the law and the evidence. *Id.* at 20–21.  No jurors indicated safety or other concerns.

"The sixth amendment right to trial by jury is designed to ensure criminal defendants a fair trial by a 'panel of impartial, indifferent' jurors.'" *United States v. Shackleford*, 777 F.2d 1141, 1145 (6th Cir. 1985) (quoting *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).  In *Remmer v. United States*, the Supreme Court held that when a trial court learns of possible juror bias, the court must "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate."  347 U.S. 227, 230 (1954).  We require a *Remmer* hearing "whenever the defense raises a 'colorable claim of extraneous influence.'" *United States v. Owens*, 426 F.3d 800, 805 (6th Cir. 2005) (citation omitted).  "When a defendant stares at a juror during the course of his trial, however, he has introduced no outside contact with, nor special information about, a party or witness." *Id.*  The juror in this case, as in *Owens*, did not state that she had outside information or an out-of-court experience that caused her to fear for her safety; her fear was a purely personal reaction to seeing the defendant in the courtroom.  This is not an "extraneous influence" that triggers the requirement of a *Remmer* hearing for the juror who expressed concern or for the other jurors.  The district court did not, therefore, abuse its discretion by failing to conduct individual *Remmer* hearings for all of the jurors.

## V.  STIPULATION OF INTERSTATE COMMERCE ELEMENT

Before trial, a stipulation was entered by Ford's and Perdue's attorneys that the robberies alleged in the superseding indictment satisfied the 18 U.S.C. § 1951 element of interference with interstate commerce.[10]  The district court instructed the jury on the robbery affecting commerce counts against Ford and Perdue as follows:

> For you to find either defendant guilty of any of these crimes, you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt with respect to each count in which a defendant is charged:
>
> . . .
>
> And second, that the defendant's act of robbery obstructed, delayed, or affected commerce . . . The parties have stipulated that the robberies charged in the Indictment affected commerce, and so *you must accept that fact as established.  It is not necessary for the government to prove that the defendant actually intended to obstruct, delay, or affect commerce*.
>
> If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge.  And if you have a reasonable doubt about any one of these elements, then you must find the defendants not guilty of this charge.

R. 208 (Trial Tr. at 20–21) (Page ID #2509–10) (emphasis added).  Ford argues that the district court erred by denying his right to a jury trial without properly inquiring whether he waived that right knowingly, intelligently, and voluntarily.

Because Ford did not raise this argument in the district court, we review for plain error.  *United States v. Monghan*, 409 F. App'x 872, 875 (6th Cir. 2011).  "[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004).  Plain error requires (1) an "error or defect," (2) that is "clear or obvious," and (3) that "affect[s] the appellant's

---

[10]"The United States of America . . . and Scott Graham, attorney for Jordan Ford, hereby stipulate and agree as follows:  That the robberies alleged in the Superseding Indictment in this matter did unlawfully obstruct, delay and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce.  The parties agree by this stipulation that this essential element (affect [sic] on interstate commerce) has been satisfied by the United States."  R. 188 (Stipulation at 1) (Page ID #639).

substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings.'" *Puckett*, 556 U.S. at 135. If those first three prongs are satisfied, we should correct a plain error "if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Olano*, 507 U.S. 725, 736 (1993) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). Even if we assume error, Ford cannot show that the error harmed his substantial rights in light of the stipulation.

## VI.  SENTENCING CLAIMS

### A.  18 U.S.C. § 924(c) Claim by Ford and Perdue

Ford and Perdue argue that the district court violated the Double Jeopardy Clause by improperly predicating multiple 18 U.S.C. § 924(c) counts on the single conspiracy count. Typically, the application of 18 U.S.C. § 924(c) is a question of law that we review de novo. *United States v. Langan*, 263  F.3d 613, 626–27 (6th Cir. 2001). However, because neither Ford nor Perdue raised this objection at sentencing, we review for plain error. *United States v. Yancy*, 725 F.3d 596, 600 (6th Cir. 2013).

Ford and Perdue were each convicted of a single act of conspiracy in violation of 18 U.S.C. § 1951; multiple counts of robbery in violation of 18 U.S.C. § 1951; and multiple counts of possession and brandishing or discharging a firearm in furtherance of crimes of violence in violation of 18 U.S.C. § 924(c). R. 77 (Superseding Indictment). Each § 924(c) count was charged in the indictment as being in furtherance of the crimes of violence alleged in Count 1 (conspiracy count) and a robbery count. For example, Count 3 charging Ford with a violation of § 924(c) stated:

> On or about February 11, 2009, in Ingham County, in the Southern Division of the Western District of Michigan, WILNELL HENRY, a/k/a "Prince Nev," a/k/a "P-Nev," and JORDON FORD, a/k/a "JD," did possess, and brandish a firearm, and aid and abet in the possession and brandishing of a firearm, in furtherance of the crimes of violence alleged in Counts 1 and 2 of this Superseding Indictment, incorporated here by reference.

R. 77 (Superseding Indictment at 4) (Page ID #132).  Count 1 charged Ford with conspiracy; Count 2 charged Ford with the February 11, 2009, robbery of Check Into Cash.  *Id.* at 3 (Page ID #131).  The indictment thus predicated the § 924(c) charge on both the conspiracy charge and a single robbery charge.  The other § 924(c) counts followed this format.  The verdict form and special interrogatories clearly indicate that the jury found that each § 924(c) conviction was predicated on guilt of both the conspiracy count and a robbery count.  R. 190 (Jury Verdict) (Page ID #642).

"The Double Jeopardy Clause of the Fifth Amendment prohibits multiple punishments for the same criminal act or transaction."  *United States v. Graham*, 275 F.3d 490, 519 (6th Cir. 2001).  Because of this prohibition, "a court may not impose more than one sentence upon a defendant for violations of section 924(c) which relate to but one predicate offense."  *United States v. Sims*, 975 F.2d 1225, 1233 (6th Cir. 1992).  However, we do "uph[o]ld multiple convictions and sentences under 18 U.S.C. § 924(c)(1) so long as such convictions are based on separate predicate acts."  *Graham*, 275 F.3d at 519–20.  Although every § 924(c) count was based on the same conspiracy count, each was also tied to a unique robbery count.  Therefore, the § 924(c) sentences did not "relate to but one predicate offense," *Sims*, 975 F.2d at 1233, and so did not violate the Double Jeopardy Clause.  It was not error for the district court to sentence Ford and Perdue based on multiple § 924(c) convictions.

**B.  Perdue's Sentence**

Perdue argues that the district court did not recognize its authority to disagree with the Sentencing Guidelines as a basis for a downward variance.  He concedes that his claim is reviewed for plain error because he did not object to this procedural error during sentencing and the district court conducted an adequate *Bostic* inquiry.[11]  Perdue Appellant Br. at 26.

---

[11]In *United States v. Bostic*, we "announce[d] a new procedural rule, requiring district courts, after pronouncing the defendant's sentence but before adjourning the sentencing hearing, to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." 371 F.3d 865, 872 (6th Cir. 2004).  If the defendant does not raise an objection when given an adequate opportunity to do so, we review the objection raised on appeal for plain error. *United States v. Tate*, 516 F.3d 459, 464 (6th Cir. 2008).

The Presentence Investigation ("PSR") calculated Perdue's period of incarceration at a range of 1,494 to 1,546 months, largely due to lengthy mandatory minimum sentences for the multiple § 924(c) counts. Presentence Investigation Report at 39. Before the sentencing hearing, Perdue filed a motion for a downward departure or variance. R. 215 (Perdue Sent. Mot. at 1) (Page ID #2723); R. 216 (Perdue Sent. Memo.) (Page ID #2724). He argued that the imposition of what amounted to a life sentence violated the Eighth Amendment and 18 U.S.C. § 3553. R. 216 (Perdue Sent. Memo.) (Page ID #2724). The government opposed the request for a downward departure or variance. R. 228 (Gov't Opp. to Perdue Sent. Memo.) (Page ID #2789). Perdue was sentenced to 1,464 months of incarceration. R. 256 (Ford Sent. Tr. at 24) (Page ID #2943).

On appeal to this court, Perdue argues that the district court committed procedural error by failing to recognize its authority to vary from the Sentencing Guidelines based on the effect of the § 924(c) sentences and Eighth Amendment concerns. Perdue Appellant Br. at 26–29. "A sentence is procedurally inadequate if the district court fails to calculate properly the Guidelines range, treats the Guidelines as mandatory, fails to consider the section 3553(a) factors, selects the sentence based upon clearly erroneous facts, or fails to adequately explain the chosen sentence." *United States v. Harmon*, 607 F.3d 233, 238 (6th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

As evidence that the court did not recognize its discretion to vary from the Guidelines, Perdue points to a statement of the district court during the sentencing hearing: "And even though the same authority I've just talked about I think precludes me from any kind of a departure or variance on the robbery offenses because I think he's already getting enough time on the weapons offenses, I don't think I can do that." Perdue Appellant Br. at 28–29 (quoting R. 206 (Perdue Sentencing Tr. at 21–22) (Page ID #2940–41)). This comment came after the district court discussed Sixth Circuit cases analyzing whether a district court may vary or depart below the statutory mandatory minimums in order to honor the mandate under § 3553(a) that the sentence be "sufficient

but not greater than necessary, to comply with" the goals of sentencing. R. 256 (Perdue Sentencing Tr. at 15) (Page ID #2934); 18 U.S.C. § 3553(a). The district court concluded that under Sixth Circuit precedent, "the very general statute § 3553(a) cannot be understood to authorize courts to sentence below minimums specifically prescribed by Congress." R. 256 (Perdue Sent. Tr. at 15) (Page ID #2934).

The district court's recognition of its lack of authority to sentence below the mandatory minimum for the § 924(c) counts through consideration of the § 3553(a) factors was correct under the law of this circuit. In *United States v. Franklin*, we held that "§ 3553(a) factors do not apply to congressionally mandated sentences." 499 F.3d 578, 585 (6th Cir. 2007). Even when a district court considers the mandatory minimum sentences to be "'draconian' and 'inappropriate,'" nonetheless "[w]hen a court and a mandatory minimum are in conflict, the minimum wins." *United States v. Cecil*, 615 F.3d 678, 695 (6th Cir. 2010). Although a sentence may be procedurally unreasonable if it "fails to consider the section 3553(a) factors," *Harmon*, 607 F.3d at 238, a sentence is not rendered procedurally unreasonable by the district court correctly acknowledging when it lacks discretion. Accordingly, the district court did not err and Perdue's sentence was not procedurally unreasonable.

## C. Nathan's Sentence

Nathan argues that his sentence is procedurally unreasonable because the district court misapplied § 1B1.2(d) of the 2011 U.S. Sentencing Guidelines Manual ("U.S.S.G.") by considering robberies for which he was indicted but did not plead guilty as object offenses of the conspiracy, leading to a five-level sentencing enhancement. He argues that his sentence was substantively unreasonable because the enhancement based on the robberies violated his Sixth Amendment right to a jury trial. We review his claim for an abuse of discretion. *United States v. Christman*, 607 F.3d 1110, 1117 (6th Cir. 2010). "An error of law in the application or interpretation of the Guidelines constitutes an abuse of discretion." *United States v. Levy*, 250 F.3d 1015, 1017 (6th Cir. 2001).

### 1. Procedural Unreasonableness

Nathan argues that his sentence is procedurally unreasonable because the district court erroneously counted robberies as object offenses of the conspiracy to which he pleaded, even though neither the indictment nor his plea agreement specified which robberies were objects of the conspiracy.

Nathan pleaded guilty to Count 1 of the superseding indictment, conspiracy to commit robbery affecting interstate commerce. R. 129 (Nathan Plea at 1) (Page ID #251). The indictment did not provide any specific information about the robberies that were the objects of the conspiracy; it merely stated that the conspiracy occurred "[f]rom in or about February 2009, to on or about October 9, 2009, in Ingham County, in the Southern Division of the Western District of Michigan . . ." and that "[t]he object of the conspiracy was to obtain money by committing robberies of commercial businesses in the greater Lansing, Michigan, area." R. 77 (Superseding Indictment at 1–2) (Page ID #129–30).

In determining the adjustments to Nathan's sentence under § 3D1.4, the PSR assigned units for thirteen robberies that it concluded were objects of the conspiracy and came to a combined adjusted offense level of thirty-six. PSR at 31–32. Because robbery offenses are not subject to the grouping rules, *see* §§ 3D1.2(d), 2B3.1, the PSR determined Nathan's offense level as if he had been convicted of conspiracy to commit each robbery pursuant to § 1B1.2(d). Although many of the robberies counted as object offenses were substantive robbery counts in the superseding indictment, six of the robberies were not charged in the superseding indictment.**[12]** At sentencing, Nathan objected to this increase as a misapplication of U.S.S.G. § 1B1.2(d). R. 273 (Nathan Sent. Tr. at 6–7) (Page ID #3058–59). The district court rejected the claim under

---

**[12]**Nathan was charged in the superseding indictment with seven of the robberies counted as object offenses: Hungry Howie's, Mario's Market, West Saginaw Party Store, Big Ten Party Store, Famous Taco Restaurant, Citgo Gas Station, and Mount Hope Party Store. R. 77 (Superseding Indictment at 8–20) (Page ID #136–148); PSR at 24–31. These robbery charges were dismissed pursuant to Nathan's plea agreement to the single conspiracy charge. R. 129 (Nathan Plea Agreement at 3) (Page ID #253). Six of the robberies counted as object offenses were not charged in the superseding indictment: Shell Gas Station, Hot House, Admiral Gas Station on two occasions, Quality Dairy, and Flower World. PSR at 24–31.

§§ 1B1.2(d) and 3D1.4, noting that all thirteen robberies were within the time frame, location, and type of action charged in the conspiracy and finding beyond a reasonable doubt that each of the thirteen robberies was within the scope of the conspiracy. *Id.* at 18 (Page ID #3070).

Section 1B1.2(d) provides that "[a] conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." Application Note 3[13] to this Guideline explains that "where a conviction on a single count of conspiracy establishes that the defendant conspired to commit three robberies, the guidelines are to be applied as if the defendant had been convicted on one count of conspiracy to commit the first robbery, one count of conspiracy to commit the second robbery, and one count of conspiracy to commit the third robbery." U.S.S.G. § 1B1.2(d), cmt. n.3 (2011).

Application Note 4 to § 1B1.2(d) urges:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should *only* be applied with respect to *an object offense alleged in the conspiracy count* if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense. Note, however, if the object offenses specified in the conspiracy count would be grouped together under § 3D1.2(d) (e.g., a conspiracy to steal three government checks) it is not necessary to engage in the foregoing analysis, because § 1B1.3(a)(2) governs consideration of the defendant's conduct.

U.S.S.G. § 1B1.2(d), cmt. n.4 (emphasis added). Nathan argues that the thirteen robberies were not "alleged in the conspiracy count" by the indictment or the plea under Application Note 4, and therefore should not have been counted as object offenses.

---

[13]We may look to the Application Notes for guidance. "Commentary which functions to 'interpret [a] guideline or explain how it is to be applied,' controls, and if failure to follow, or a misreading of, such commentary results in a sentence 'select[ed] . . . from the wrong guideline range, that sentence would constitute 'an incorrect application of the sentencing guidelines' under 18 U.S.C. § 3742(f)(1)." *Stinson v. United States*, 508 U.S. 36, 42–43 (1993) (internal citations omitted).

We have not decided whether robberies may be counted as object offenses of a conspiracy when the conspiracy count under which defendant was convicted does not enumerate or list the robberies.[14] The Government urges this court to follow the Second Circuit's decision in *United States v. Robles*, which held that multiple robbery offenses may be treated as objects of a conspiracy under § 1B1.2(d) even where the offenses were not specifically named in the conspiracy count. *United States v. Robles*, 562 F.3d 451, 455 (2d Cir. 2009). We agree with our sister circuit's interpretation of Application Note 4. The Second Circuit concluded that the emphasis of Application Note 4 was not "on the specificity of the conspiracy charge but on the standard of proof that must be satisfied" for the court to count an object offense towards the defendant's offense level. *Id.* Further, because Application Note 4 specifically addresses situations where "the verdict . . . does not establish which offense(s) was the object of the conspiracy," if the Note "required that the objects of a conspiracy be specifically named in the conspiracy count of an indictment, it would be difficult to imagine the reason for this comment's existence." *Id.* (internal citation omitted). Accordingly, the district court did not err in counting the thirteen robbery offenses as object offenses of the conspiracy.

### 2. Substantive Unreasonableness

Nathan argues that his sentence was substantively unreasonable because the district court made factual findings that Nathan committed the robberies; Nathan argues that the sentencing enhancement based on the findings of the district court violated his Sixth Amendment right to a jury trial, and therefore rendered his sentence substantively unreasonable. This claim is without merit. Application Note 4 to § 1B1.2(d) provides that when "the verdict or plea does not establish which offense(s) was the object of the conspiracy," an offense may be counted "with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the

---

[14] At the sentencing hearing, the district court relied on *United States v. Bates*, 552 F.3d 472, 477 (6th Cir. 2009), noting that "even though *Bates* dealt with a slightly different issue . . . the message of the case to me from the Sixth Circuit is the Sixth Circuit doesn't have any problem with the method." R. 273 (Nathan Sent. Tr. at 15–16) (Page ID #3067–68). We disagree with the district court's reading of this "message" in *Bates*. The *Bates* defendant did not challenge the counting of robbery offenses as objects of the conspiracy, and we did not discuss or decide the propriety of that procedure when the conspiracy count does not list or enumerate the object offenses.

defendant of conspiring to commit that object offense." After *United States v. Booker*, 543 U.S. 220 (2005), "a District Court may rely on extra-verdict facts or on those other than which the defendant has specifically admitted when it calculates his sentence." *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006). "[U]nder the advisory Guidelines, [a] defendant may be sentenced up to the statutory maximum if such a sentence would comply with 18 U.S.C. § 3553(a)." *United States v. Barton*, 455 F.3d 649, 655–56 (6th Cir. 2006). That Nathan's sentencing enhancement was based on findings by the district court, not the jury, did not violate his Sixth Amendment right to trial by jury, and accordingly, Nathan's sentence is not substantively unreasonable.

**D. Henry's Sentence**

Henry argues that his sentence was procedurally unreasonable because the district court failed to articulate the applicable Sentencing Guidelines range after granting a § 5K1.1 departure and then failed to articulate the extent of the upward variance.[15] Henry concedes that this court should review his sentence for plain error because he did not object to the sentence on procedural unreasonableness grounds after being given an adequate opportunity to do so. Henry Appellant Br. at 9–10.

The district court began Henry's sentencing hearing by stating the applicable Guidelines range; with an offense level of 29 and criminal history Category VI, the Guidelines range was 151 to 188 months of imprisonment. R. 291 (Henry Sent. Tr. at 10) (Page ID #3181). The district court then discussed whether there were reasons for a variance based on the 18 U.S.C. § 3553(a) factors or a departure under § 5K1.1 based on Henry's substantial assistance to authorities. *Id.* at 19 (Page ID #3190). The district court concluded that Henry had provided substantial assistance that warranted an adjustment, but proceeded to discuss his concerns that Henry was the leader of the robbery conspiracy, was the "least believable" of the co-conspirators who provided testimony at trial, had lied to law enforcement, and had a criminal history beginning at

---

[15]Henry's plea agreement waived most appeal rights. However, the government can lose its right to assert waiver "by failing to raise it in a timely fashion." *Hunter v. United States*, 160 F.3d 1109, 1113 (6th Cir. 1998). Because the government does not assert that Henry is precluded from bringing this appeal, we need not determine if this issue is within the scope of Henry's waiver of appellate rights.

age twelve. *Id.* at 22–27 (Page ID #3193–98). The district court mentioned co-conspirator Nathan's sentence of 168 months and then sentenced Henry to 150 months of imprisonment. *Id.* at 29–30 (Page ID #3200–01).

Henry argues that the district court was required to state the new Guidelines range that applied after granting the § 5K1.1 downward departure, and then to state specifically the amount of the upward variance from that new Guidelines range. However, we have held that "[t]here is no requirement that, after concluding that a departure is warranted, the court must specify a new, adjusted sentencing range." *United States v. Herrera-Zuniga*, 571 F.3d 568, 588 (6th Cir. 2009). A sentence may be procedurally unreasonable when the district court fails to identify "any specific, numeric Guidelines range at *any point* during the hearing." *United States v. Novales*, 589 F.3d 310, 314 (6th Cir. 2009) (emphasis added); *see also Gall*, 552 U.S. at 49 (stating that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . [T]he Guidelines should be the starting point and the initial benchmark."). Here, however, the district court stated the Guidelines range that applied prior to making any departures or variances. Accordingly, Henry has not demonstrated plain error, and we affirm his sentence.

## VII.  MOTION TO DISMISS

Ford and Perdue filed *pro se* motions "to dismiss due to lack of jurisdiction." Ford Memo. at 1; Perdue Memo. at 1. They argue that "[t]he United States lacked subject-matter jurisdiction" "due to the government's failure to prove interference with interstate commerce." *Id.* Prior to trial, a stipulation was entered that stated that the robberies satisfied the element of interstate commerce. R. 188 (Stipulation at 1) (Page ID #639). Ford's and Perdue's attorneys signed the stipulation. *Id.* However, in their motions to dismiss, Ford and Perdue assert for the first time that they were unaware of and did not agree to the stipulation and that although the stipulation was read at trial, they were not aware that the "stipulation was waiving the defendant's jurisdiction." Ford Memo. at 4; Perdue Memo. at 6. Like a claim of ineffective assistance of counsel, this argument depends on facts outside of the record and so is more properly presented

in a 28 U.S.C. § 2255 petition.  Because this argument was not raised below and the appellate record does not provide an adequate basis to assess this claim, we decline to decide this issue.

## VIII.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the convictions and sentences of Ford, Perdue, Nathan, and Henry.