**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-12097

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

KENNETH PERTILLO,
   a.k.a. Fat Boy,
JOHNIFER DERNARD BARNWELL,
   a.k.a. Whoop,
   a.k.a. Malixe,

*Defendants-Appellants.*

————————————————

Appeals from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:22-cr-00009-CAR-CHW-2

————————————————

Before ROSENBAUM, LUCK, and ABUDU, Circuit Judges.

PER CURIAM:

Kenneth Pertillo and Johnifer Barnwell were convicted of six drug-related offenses. Pertillo argues that his convictions should be vacated because the district court erred in admitting evidence of an earlier drug sale and notebooks that contained a story he was writing based on his life. Barnwell argues that we should vacate his convictions because the district court erred in admitting evidence of his gang affiliation and statements made by the court at the sentencing hearing required recusal. After careful consideration, we affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Law enforcement received a tip in 2020 about a heroin-dealing ring in Macon, Georgia. After conducting controlled buys from De'Kerio Coleman, agents wiretapped his phone and found his supplier was his brother, Christopher Coleman. After another wiretap, police learned that Christopher had two suppliers, one of whom was Barnwell. And a wiretap on Barnwell's phone led police to Pertillo. Further monitoring established that Pertillo and Barnwell were working together as partners.

After an extensive investigation, more than 100 law enforcement officers executed search warrants at eleven locations in Macon in July 2021. The searches yielded over a kilogram of heroin, over two and a half kilograms of fentanyl, over two and a half kilograms of methamphetamine, and 280 grams of cocaine base. Police arrested Barnwell and Pertillo.

In early 2022, seventeen defendants were indicted on seventeen counts. Fifteen were drug-related and the other two were for

possessing a firearm in furtherance of a drug trafficking crime. Before trial, fourteen defendants pleaded guilty, but Pertillo and Barnwell proceeded to trial along with another codefendant, Zerick Usry. Pertillo and Barnwell faced six drug-related counts, and Barnwell faced another for possessing a firearm in furtherance of a drug trafficking crime.

The defendants brought several pretrial motions. First, Pertillo moved to exclude testimony that he previously sold meth in West Virginia. The district court admitted the testimony because it was the "classic kind of" rule 404(b)[1] evidence.

Second, Barnwell moved to exclude any reference to his affiliation with the Macon Mafia gang. The district court denied the motion and admitted his gang affiliation as rule 404(b) evidence because it explained the conspiracy's "mode of doing business."

Third, Pertillo moved to exclude notebooks found in his car when he was arrested. The notebooks contained a draft of a story Pertillo was writing about his life called "MACONGA: From Da Bottom 2 Da Top." In the story, the main character returns to Macon from federal prison, picks up three bricks of cocaine from a room adorned with pictures of Tony Montana and Pablo Escobar, and fantasizes about the quick money he will make by turning the cocaine into "[s]traight [d]rop [c]rack" and selling it. The district court found the notebooks were admissible as intrinsic evidence

---

[1] Federal Rule of Evidence 404(b).

because they were necessary to complete the story of the conspiracy.

At trial, the government presented evidence of Pertillo's previous drug sale in West Virginia. After the drug sale evidence was admitted, the district court instructed the jury not to consider it in deciding whether Pertillo engaged in the conduct charged in the indictment. The jury also heard testimony that the defendants were members of the Macon Mafia gang, and about the content of Pertillo's notebooks. In the end, Pertillo and Barnwell were convicted of the six drug-related counts, but Barnwell was found not guilty of possessing a firearm in furtherance of a drug trafficking crime.

At Barnwell's sentencing hearing, the district court said that:

> if I'm remembering correctly, the day that the searches and the arrests went down, there was something like a hundred agents, or something like that, who were involved in this. There were various houses that were actually used in the conspiracy in different ways. As it turned out, I think as I told y'all, I had actually been in one of them that was right across the street from the church that I was going to at the time.

Pertillo and Barnwell were sentenced to life imprisonment.

## STANDARD OF REVIEW

We review for abuse of discretion a district court's determination that evidence is admissible. *United States v. Macrina*, 109

F.4th 1341, 1347 (11th Cir. 2024).  When examining a district court's ruling under Federal Rule of Evidence 403, "[w]e defer to the discretion of the district court on 'whether the probative value was outweighed by any unfair prejudice,' and we reverse the decision to admit the testimony 'only if it were clearly an abuse of discretion.'" *Id.* at 1350 (quoting *United States v. Calhoon*, 97 F.3d 518, 533 (11th Cir. 1996)).  We similarly review the admission of evidence under rule 404(b) for abuse of discretion.  *United States v. Nerey*, 877 F.3d 956, 972 (11th Cir. 2017).  When reviewing the admission of evidence on an abuse of discretion standard, we must "look at the evidence in a light most favorable to its admission." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (citation modified).

"Ordinarily, we review a judge's decision not to recuse him or herself for an abuse of discretion." *United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004).  But when a party did not seek recusal below, "we review his recusal request for plain error." *Id.*

## DISCUSSION

There are four issues on appeal.  First, Pertillo contends that the district court erred in admitting evidence of his previous West Virginia drug sale.  Second, Barnwell argues that the district court erred in admitting evidence of his gang affiliation.  Third, Pertillo asserts that the district court erred in admitting notebooks.  And fourth, Barnwell maintains that the district court should have recused because it had personal knowledge about the search of one of the drug houses.  We address each issue in turn.

6                          Opinion of the Court                     24-12097

*Pertillo's prior drug sale*

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But the evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. R. 404(b)(2). We use a three-part test to review the admission of rule 404(b) evidence: "(1) the evidence must be relevant to an issue other than the defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; and (3) the government must offer sufficient proof so that the jury could find that the defendant committed the act." *United States v. LaFond*, 783 F.3d 1216, 1222 (11th Cir. 2015) (citation modified).

Pertillo, on appeal, does not contest the first two parts of the test—that the evidence was relevant to his intent and there was sufficient proof for the jury to find that he sold meth in West Virginia. Instead, Pertillo argues that the third part of the test was not met: the probative value of his West Virginia drug sale was substantially outweighed by its prejudicial effect.

As to the third part of the test, the West Virginia drug sale was highly probative of Pertillo's intent and was not overly prejudicial. Pertillo put his intent at issue when he pleaded not guilty, and his intent remained at issue throughout the trial. *See United States v. Harding*, 104 F.4th 1291, 1301 (11th Cir. 2024) ("A

defendant who pleads not guilty to a drug conspiracy puts his intent at issue and opens the door to admission of prior drug-related offenses as highly probative, and not overly prejudicial, evidence of his intent." (citation modified)). "We have repeatedly held that evidence of prior drug-related offenses is highly probative of a defendant's intent and not overly prejudicial." *Id*. So we cannot say the district court abused its discretion in declining to invoke the "extraordinary remedy" of excluding evidence of Pertillo's prior drug sale. *See Lopez*, 649 F.3d at 1247.

### Barnwell's gang affiliation

For his part, Barnwell argues that the district court erred by admitting evidence of his gang affiliation under rule 404(b). Like Pertillo, Barnwell focuses on the third part of the test—that the prejudicial effect of the gang-affiliation evidence substantially outweighed its probative value.

Here, the evidence of Barnwell's gang affiliation was relevant to show how the conspirators came to know one another. *See United States v. Ford*, 761 F.3d 641, 649 (6th Cir. 2014) ("Evidence of gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case, such as in a conspiracy case."); *United States v. Johnson*, 28 F.3d 1487, 1497 (8th Cir. 1994) (same); *see also United States v. Jernigan*, 341 F.3d 1273, 1284–85 (11th Cir. 2003) (approving of admission of gang-affiliation evidence in a felon-in-possession case where the gun was found wrapped in a bandana of the gang's color), *abrogated on other grounds by Rehaif v. United States*, 588 U.S. 225 (2019). And the

evidence was also relevant to show the conspirators' "mode of do-ing business."  At the same time, the prejudicial effect was miti-gated by the district court's limitation on the government from in-troducing evidence that the "gang [was] known by law enforce-ment to be a violent one."  Put together, we cannot say that the district court clearly abused its discretion in striking the balance in favor of admitting the gang evidence.

Barnwell responds that the gang evidence had scant proba-tive value.  He argues that, while an agent testified that gang mem-bers often communicate in coded language, none of the coded lan-guage was exclusive to Barnwell's gang—the Macon Mafia.  But, as we've explained, the gang evidence had probative value independ-ent of the use of coded language.  For example, one of Barnwell's co-conspirators, Christopher Coleman, testified that he came to know Barnwell through the Macon Mafia gang.  So even if Barn-well's gang affiliation was not necessary to explain his use of coded language, it was still probative of the existence of a conspiracy.

Barnwell also argues that the district court erred by failing to give a limiting instruction when admitting evidence of Barn-well's gang affiliation.  But Barnwell did not ask the district court to give a limiting instruction.  The district court did not abuse its discretion here by failing to give a jury instruction when the de-fendant did not ask the court to exercise its discretion by giving the instruction.  *See United States v. Dohan*, 508 F.3d 989, 993 (11th Cir. 2007) (failure to give a jury instruction "[r]eviewed for abuse of dis-cretion").

*Pertillo's notebooks*

Turning back to Pertillo, he argues that the district court erred in admitting his notebooks. The district court, he contends, should have excluded the notebooks because they were extrinsic evidence of prior acts under rule 404(b) and because their prejudicial effect substantially outweighed their probative value under rule 403.

Evidence falls outside the scope of rule 404(b) "when it is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'" *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (quoting *United States v. Baker,* 432 F.3d 1189, 1205 n.9 (11th Cir. 2005)). The district court found the notebooks were necessary to complete the story of Pertillo's role in the drug conspiracy. We agree.

Police found Pertillo's notebooks in his car after arresting him. The notebooks contained a story that Pertillo was writing based on his life called "MACONGA: From Da Bottom 2 Da Top." In the story, the main character returns to Macon from federal prison, picks up three bricks of cocaine from a room adorned with pictures of Tony Montana and Pablo Escobar, and fantasizes about the quick money he will make by turning the cocaine into "[s]traight [d]rop [c]rack" and selling it. Like the character in his story, Pertillo was from Macon, had served time in federal prison, and led a large conspiracy distributing drugs.

"Evidence is necessary to complete the story of a crime when the evidence explains the 'context, motive, and set-up of the crime' or reveals important details about the criminal scheme." *Harding*, 104 F.4th at 1297 (quoting *United States v. Holt*, 777 F.3d 1234, 1261–62 (11th Cir. 2015)). Here, the notebooks helped explain the context, motive, and set-up of the conspiracy—Pertillo sought to quickly make money with his associates after his stint in prison. The notebooks therefore fell outside the scope of rule 404(b).

Pertillo responds that the notebooks were undated and, thus, it was impossible to know when the events described in them occurred. But there were sufficient references in the notebooks to events that occurred in Pertillo's life—like when he earned his GED and when he was released from prison—to show when they were written.

Pertillo also contends that regardless whether the evidence was intrinsic or extrinsic, it was substantially more prejudicial than probative under rule 403 because it was cumulative of the government's other evidence. But, as the district court explained, the notebook was not cumulative. It was the only evidence showing Pertillo's motive for entering into the conspiracy with Barnwell and the others.

### Recusal

Finally, Barnwell contends that the district court plainly erred in failing to recuse despite the statement made at the sentencing hearing about having some familiarity with one of the houses

searched by law enforcement.  Barnwell argues that the district court's statement that it "had actually been in one of them that was right across the street from the church that I was going to at the time" shows that it personally observed the law enforcement raids at the house.

While the court must recuse when it has "personal knowledge of disputed evidentiary facts concerning the proceeding," 28 U.S.C. § 455(b)(1), *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013), Barnwell misunderstands the district court's statement.  In context, the court explained that it had previously been inside one of the houses while the judge attended a church in the area.  The court did not say, and its statement cannot reasonably be read to mean, that it personally witnessed the search of the house.  Because the district court had no personal knowledge of disputed evidentiary facts, it did not plainly err by failing to recuse.

**AFFIRMED**.