NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name:  15a0037n.06

No. 14–5472

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JASON CASTLE,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Jan 13, 2015
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES  DISTRICT  COURT  FOR
THE   WESTERN   DISTRICT   OF
TENNESSEE

**BEFORE:  NORRIS, ROGERS, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**  Jason Castle was convicted of being a felon in

possession of a firearm, 18 U.S.C. § 922(g), and was sentenced to 271 months in prison as an

armed career criminal, 18 U.S.C. § 924(e)(1).  He appeals both his conviction and sentence,

asserting that the Government failed to prove he "possessed" the firearm; that the district court

erred in not giving a cautionary instruction to the jury regarding a lay witness's testimony; that a

supplemental  jury  instruction  was  collateral  to  the  original  jury  instructions  and  thus

inappropriate; that the district court improperly considered facts underlying a criminal charge

pending against him when weighing the 18 U.S.C. § 3553(a) sentencing factors; and that the

district court assigned unreasonable weight to a particular § 3553(a) factor resulting in a

substantively unreasonable sentence.  We disagree, and AFFIRM.

**I.**

On April 17, 2012, three Memphis police officers stopped a white Chevrolet Impala

because its windows appeared to violate Tennessee's window-tint law.  Tenn. Code Ann. § 55-9-

107 (West 2012).  Detective Alexander Corder approached the driver, Latasha Webb, while

Detective Michael Goedecke approached the passenger, Castle. The third detective, Detective Michael Branning, was the last to arrive on the scene and stood at the rear of the Impala, ready to assist the other detectives as needed. Detective Goedecke asked Castle to exit the vehicle. Once Castle got out of the car, he stood in a "squatted" position that Detective Branning described as "something [he] had never seen before." Castle was "sagging" and Detective Goedecke asked him to pull up his pants prior to doing a pat-down of Castle's waist; Castle complied, but immediately thereafter returned to the unnatural "squatting" position. After not finding any weapons during the pat-down, Detective Goedecke instructed Castle to walk towards the back of the Impala and stand near Detective Branning. However, as soon as Castle took a step towards the rear of the Impala, Detectives Goedecke and Branning heard a metal-sounding "thump" on the ground and saw a gun lying in between Castle's feet. Castle looked down at the gun, up at the officers, and took off running. He was apprehended within 100 yards of the Impala and placed in custody.

The three detectives who conducted the traffic stop testified at trial, as did Webb and Detective Brandon Champagne, an officer who tried to recover fingerprints from the gun. Each witness testified that the gun did not belong to him or her and that he or she had not placed the gun between Castle's feet. Detective Champagne testified that he did not find fingerprints on the firearm recovered at the scene, but that based on his experience, finding fingerprints on firearms is exceptionally rare. The jury convicted Castle as charged.

Castle was sentenced to 271 months' imprisonment—within the Guidelines range of 235 to 293 months, but 91 months more the statutory-minimum sentence. The district court based the sentence in part on "relevant conduct" consisting of a robbery that occurred two days before the traffic stop.

**II.**

**A.**

Castle first argues that the Government failed to introduce sufficient evidence to convict him of being a felon in possession of a firearm. A criminal conviction is supported by sufficient evidence if, after viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000). Here, the Government had to prove beyond a reasonable doubt that: (1) Castle was a convicted felon, (2) Castle possessed a firearm, and (3) the firearm Castle possessed had traveled in or affected interstate commerce. 18 U.S.C. § 922(g)(1). Castle stipulated to the first and third elements, so we consider only whether the Government introduced sufficient evidence for the jury to find that Castle "possessed" the firearm the detectives found between his feet. Actual or constructive possession is sufficient to give rise to criminal liability under § 922(g). *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). Actual possession, which is at issue here, requires that Castle have "immediate possession or control" of the firearm. *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977).

There was sufficient evidence to support a finding that Castle actually possessed the firearm recovered from the scene. Castle exited the vehicle in an awkward, squatting position; Detective Branning testified that when Castle moved towards the rear of the car a firearm fell out of his pant leg; and Detective Goedecke testified that, after Castle took one step towards the back of the car, he "heard a metal sound hit the ground, looked down and saw it was a pistol that had fallen out of [Castle's] pants leg." Both detectives testified that the firearm introduced at trial was "the firearm that was recovered from the scene that fell out of Mr. Castle's pants leg."

Finally, each of the three detectives on the scene, as well as Webb, testified that he or she had not planted the firearm that was found between Castle's feet. Although Castle offered an alternative theory at trial, the jury was not obliged to accept the theory.

Given the record as a whole, specifically the detectives' testimony, a rational trier of fact could have found beyond a reasonable doubt that Castle "possessed" the firearm recovered at the traffic stop. Thus, the Government introduced sufficient evidence to convict Castle under § 922(g).

**B.**

Castle next argues that the district court erred in permitting "Detective Champagne to testify as [] both a fact and expert witness without giving a cautionary instruction." We review a district court's evidentiary rulings, including rulings on witness testimony under Federal Rules of Evidence 701 and 702, for an abuse of discretion. *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007). A district court abuses its discretion when it commits a legal error or makes clearly erroneous findings of fact. *United States v. Ford*, 761 F.3d 641, 651 (6th Cir. 2014). We will reverse an evidentiary ruling only when a defendant's substantial rights were affected by the evidence's admission. *White*, 492 F.3d at 406 (citing Fed. R. Evid. 103(a)). Thus, "[e]ven when the district court has abused its discretion in admitting evidence, we do not reverse a conviction if the error is harmless, meaning that it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013) (quoting *United States v. Lopez-Medina*, 461 F.3d 724, 741 (6th Cir. 2006)).

Detective Champagne testified that he could not recover any "prints of value"—prints that allow the police to affirmatively identify someone—from the firearm found at the traffic

stop.  However, he went on to explain that in his career as a detective, it is exceptionally rare to recover fingerprints off of firearms, estimating that in the approximately 1,500 fingerprint-on-firearm cases in which he has been involved, he has found at most four prints of value.  Over Castle's objection, the district court determined that Detective Champagne was testifying as a lay witness, not as an expert.

To be sure, Detective Champagne's testimony stemmed from his personal knowledge, but it was not of the sort typically thought of as lay testimony.  *See* Fed. R. Evid. 701 (stating that testimony based on "specialized knowledge" is not proper for a lay witness).  In any event, we need not decide whether the jury should have been given a cautionary instruction, because any error was harmless.  The Government needed to prove only that Castle possessed a firearm within the meaning of § 922(g).  Two detectives testified that a firearm fell from Castle's pants, and a third testified that he recovered a weapon from the Impala's passenger side.  Each of the witnesses confirmed that the gun did not belong to them and that they had not placed it between Castle's feet.  Detective Champagne's testimony likely had little effect.

## C.

Castle next argues that the district court erred in giving a supplemental jury instruction in response to a question from the jury regarding the meaning of "possession" because the supplemental instruction was cumulative to the original jury instructions.  However, Castle does not argue that the supplemental instruction contained an inaccurate statement of law.  We review the district court's response to a question from the jury for an abuse of discretion.  *United States v. Khalil*, 279 F.3d 358, 367 (6th Cir. 2002).  Under the "high standard" applicable to this sort of challenge, we will reverse a conviction only if the jury instructions, taken as a whole, were

"'confusing, misleading, and prejudicial.'" *United States v. Young*, 553 F.3d 1035, 1050 (6th

Cir. 2009) (quoting *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993)).

Initially, the district court gave a jury instruction that closely parallels the Sixth Circuit's

proposed pattern-jury instruction for "possession." *See* Sixth Circuit Pattern Jury Instructions,

§ 2.10A. Nevertheless, during deliberations, the jury asked for an "expanded definition and

examples of possession and control." The district court then gave the following supplemental

instruction:

> Regarding possession, the [original] instructions on pages 19 and
> 20 of the instructions define that element of the crime charged.
> You should use those instructions.
>
> To further assist you, I will now provide some additional
> clarification to add to and supplement the definition of possession
> that you already have.
>
> If you believe beyond a reasonable doubt that the defendant
> physically held the Smith & Wesson .38 caliber handgun that is
> Exhibit 4, then he possessed it within the meaning of the law. No
> specific amount of time of possession is required. If a person
> physically controls an item and knows that he does, even for a few
> seconds, he possesses it within the meaning of the law.
>
> A person has possession of something if the person knows of its
> presence and has physical control of it. Therefore, a person who
> knowingly has direct physical control over a thing, at a given time,
> is then in actual possession of it. Possession under [§] 922(g)
> requires that a person know that the item is a firearm and know
> that he has control of it in order for the person to possess it within
> the meaning of the court's instructions.
>
> Remember, you may not single out, or disregard, any of the
> Court's instructions on the law. You must follow all of the Court's
> instructions on the law, taking each in the light of all the others.

The district court's supplemental instruction was not misleading, confusing, or

prejudicial, and Castle does not challenge the substance of the instruction. At most, the district

court clarified how possession would apply to this case, by, for example, replacing general terms

with terms specific to the case. The proper interpretation of "possession" was integral to the sole issue in dispute, and nothing the district court provided distracted the jury from its ultimate responsibility or presented it with collateral information. *See United States v. Washington*, 702 F.3d 886, 895 (6th Cir. 2012) (stating that a district court should refrain from answering jury questions regarding collateral or irrelevant issues); *United States v. Fisher*, 648 F.3d 442, 447 (6th Cir. 2011) (same). Further, each aspect of the supplemental instruction was an accurate statement of the law, and as a whole responsive to the jury's request for an "expanded" definition of possession, which is undoubtedly "an important legal issue." *See United States v. Nunez*, 889 F.2d 1564, 1567 (6th Cir. 1989) (reversing a district court's decision to *not* provide a supplemental instruction because the jury's question regarded "an important legal issue"). Finally, in two separate paragraphs, the district court explained to the jury that it should use the original instructions and that it could "not single out, or disregard" any of the original instructions. *See Young*, 553 F.3d at 1050 (stating that we look at the jury instructions *as a whole* when determining whether they were inappropriate). We find no reversible error.

## III.

## A.

Castle argues that the district court erred in sentencing when it considered facts related to an unproven armed-robbery charge described in paragraph seven of the presentence report ("Report"). Castle timely objected to paragraph seven of the Report, but the district court ultimately found that the Government presented sufficient evidence to justify consideration of the robbery.

We review a district court's factual findings at sentencing for clear error, meaning that we will not overturn them unless we are left "with the definite and firm conviction that a mistake

has been committed." *United States v. Gort-DiDonato*, 109 F.3d 318, 320 (6th Cir. 1997)

(quoting *United States v. Perez*, 871 F.2d 45, 48 (6th Cir. 1989)). When, as here, the defendant

objects to an aspect of the presentence report, the district court "may not merely summarily adopt

the factual findings in the presentence report or simply declare that the facts are supported by a

preponderance of the evidence." *United States v. Solorio*, 337 F.3d 580, 598 (6th Cir. 2003)

(internal citations omitted). Rather, "the district court must *actually find facts*, and it must do so

by a preponderance of the evidence." *White*, 492 F.3d at 416 (emphasis supplied).

Here, Castle objected to paragraph seven of the Report, which described an incident

alleged to have occurred two days before the traffic stop:

> On August 15, 2012, the victim, Charod Moody, had been
> purchasing gas at [a "Mapco" gas station]. As Moody returned to
> his vehicle, Castle approached him and asked to use his cell phone.
> Moody declined, but advised that he would make a call for him, if
> needed. Castle then pulled out a black .22 caliber firearm from
> under his shirt and stated, "get in your pockets." The victim threw
> his cell phone on the hood of his vehicle, at which point Castle
> reached in the victim's pocket and stole approximately $1,200.00
> in cash. After Castle took the money and cell phone, he pointed
> the firearm at Shantega Triggs, who was sitting in the front seat of
> Moody's vehicle and stated, "What you got?" Moody advised that
> she did not have anything, at which point Castle told the victims to
> leave the area.

Because these state-law charges were still pending, the Government had to prove Castle's

involvement by a preponderance of the evidence before the district court could consider them in

weighing the § 3553(a) factors. *See Solorio*, 337 F.3d at 598. To this end, the Government

presented the testimony of Officer Juaquatta Harris, the officer in charge of monitoring and

disseminating inmate phone calls at the prison in which Castle was being housed, as well as a

recording of a call allegedly placed by Castle. Officer Harris testified that she located the

recorded call by searching prison records for calls placed by Castle, and that she believed Castle

made the recorded call because the caller said his name was Jason, "the Castles" were referenced, the recipient was on Castle's "database list" of numbers at the prison, and Castle's unique prison-record-identification number placed the call.

After listening to the recorded conversation, the district court found that the Government had proven Castle's involvement in the robbery by a preponderance of the evidence. Specifically, the district court found that Castle admitted to robbing Triggs and Moody in a Mapco parking lot and that Castle confirmed event-specific details, such as the color of Moody's car and the type of clothes Castle was wearing that day. Most important, according to the district court, was Castle's insistence that Triggs's version of the event—which named Castle as the perpetrator—was accurate. Indeed, Castle stated at least three times during the recorded conversation that Triggs "ain't lying" about his committing the Mapco robbery.

Although there are certain factual discrepancies between paragraph seven of the Report and the dialogue of the call (*i.e.*, the amount of money stolen), enough factual elements were consistent for the district court to consider the robbery when weighing the § 3553(a) factors. *See Gort-DiDonato*, 109 F.3d at 320. Accordingly, the district court did not commit clear error.

**B.**

Castle finally argues that his sentence is substantively unreasonable because the "district court gave an unreasonable amount of weight to the deterrence and public safety sentencing factors" of § 3553(a). We review criminal sentences for both substantive and procedural reasonableness. *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). In determining substantive reasonableness, we review the district court's imposition of a sentence for an abuse of discretion, *United States v. Battaglia*, 624 F.3d 348, 350 (6th Cir. 2010), and recognize a rebuttable presumption of substantive

reasonableness for within-Guidelines sentences, *see, e.g.*, *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). We must give appropriate deference to the district court's conclusion that the sentence imposed is consistent with the § 3553(a) factors; that we "might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

Here, the Guidelines suggested a sentence of 235 to 293 months, and the district court imposed a presumptively reasonable within-guidelines sentence of 271 months. *See Williams*, 436 F.3d at 708. Castle argues that the district court's reliance on particular studies that "showed longer sentences reduce firearm violence" requires reversal because other "[s]tudies actually show that this rationale was simply in error." We disagree.

The district court carefully considered each of the § 3553(a) factors. The court relied on the armed-career-criminal minimum sentence to find that Castle deserved "at least a 15-year sentence," but went on to state that the seriousness of Castle's crime and his proclivity towards firearms necessitated additional time in prison. The district court referred to the allegedly erroneous studies in the context of § 3553(a)'s deterrence factor, finding that "long sentences reduce the number of felons who possess firearms"; in so doing, the district court acknowledged that others may disagree with the studies. The district court then found that Castle's extensive criminal history—which includes 31 convictions, five involving firearms—suggests that "the sentence should be longer in order to protect the public." Finally, the district court noted the need for Castle's sentence to be consistent with the sentences of similar offenders as well as society's interest in providing Castle with vocational skills during his incarceration. It was only then that Castle was sentenced.

The district court did not base its decision on *clearly erroneous* facts (although some may be subject to debate), and did not overly emphasize the allegedly erroneous studies; rather, it made substantial and individualized factual findings regarding each § 3553(a) factor without fixating on one particular factor. Thus, we disagree with Castle's suggestion that the deterrence factor "was given too much weight based upon the court's faulty beliefs about the efficacy of longer sentences for offenders like Mr. Castle," and find that Castle's sentence is substantively reasonable.

**IV.**

For the foregoing reasons, we AFFIRM both Castle's conviction and sentence.