[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14851
_____

D.C. Docket No. 1:13-cr-00184-TWT-JFK-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

HORACIO ARROYO-JAIMES,
a.k.a. Oracio Arrello,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 7, 2015)

Before MARCUS and JILL PRYOR, Circuit Judges, and HINKLE,[*] District
Judge.

_____

[*] Honorable Robert L. Hinkle, United States District Judge for the Northern District of Florida,
sitting by designation.

PER CURIAM:

Horacio Arroyo-Jaimes ("Arroyo") appeals his 57-month sentence for illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a), (b)(2).  At issue on appeal is whether Arroyo's right to due process was violated when the government proffered but did not offer any evidence, and the district court plainly considered as part of its sentencing calculus, that when Arroyo was arrested in April, 2012, he was found in a bedroom with more than 200 grams of methamphetamine and a digital scale.  The charges resulting from the 2012 arrest, however, were dismissed.  Arroyo claims his sentence was grounded in substantial measure on facts he disputed and the government never established.  After thorough review, and having taken oral argument, we agree.[1]  We, therefore, vacate Arroyo's sentence and remand for resentencing.

## I.

The relevant facts are these.  Arroyo, a citizen of Mexico, illegally entered the United States in 1999.  In February 2006, he entered a plea of guilty in Georgia state court to three counts of trafficking in methamphetamine stemming from a 2005 arrest in suburban Atlanta.  He was sentenced to 15 years' imprisonment to be followed by 15 years of probation.  Arroyo served approximately 6 years of his

---

[1] Arroyo also argues that his sentence is procedurally and substantively unreasonable.  In view of our disposition of the case, we need not reach either of these claims.

trafficking sentence before being released and removed from the United States on December 20, 2011.

Arroyo unlawfully reentered the United States approximately two months later, in February 2012. On April 10, 2012, he was again arrested, this time by Sandy Springs, Georgia police officers for trafficking in methamphetamine. The trafficking charge was nolle prossed on February 25, 2013, for reasons not appearing in the record. While Arroyo was in custody, he pleaded guilty in Georgia state court to charges of carrying a concealed weapon and discharging a gun near a public street stemming from a 2003 incident. He received a 180-day sentence on those counts. Arroyo also admitted to unlawfully reentering the United States prior to his 2012 arrest, and entered a non-negotiated plea of guilty to the instant offense.

A presentence investigation report ("PSI") was prepared prior to Arroyo's sentencing hearing. Pursuant to U.S.S.G. § 2L1.2(a), Arroyo's base offense level was 8. He received a 16-level increase because he was previously removed after being convicted for a felony drug trafficking offense for which the sentence imposed exceeded 13 months, and a 3-level decrease for acceptance of responsibility. See id. § 2L1.2(b)(1)(A)(i); id. § 3E1.1(a). As a result, his total offense level was 21. His criminal history category was IV because of 7 criminal history points resulting from his pleas of guilty on the weapons charges, his 2006

3

plea of guilty to trafficking in methamphetamine, and his probationary status at the time he unlawfully reentered the United States. See U.S.S.G. § 4A1.1(a)-(b), (d). A total offense level of 21 and a criminal history category of IV yielded a calculated Guidelines range of 57 to 71 months of imprisonment.

Notably, the PSI contained only a cursory description of Arroyo's April 10, 2012 arrest. The PSI simply stated that he was "arrested for trafficking in more than 200 grams of methamphetamine," and that the charge was subsequently nolle prossed. Although Arroyo lodged a number of objections to the PSI, he did not object to the bare fact that he was arrested for trafficking in methamphetamine and that the charge was subsequently dismissed. The district court adopted the facts and the Guidelines calculation set forth in the PSI.

At the sentencing hearing, Arroyo requested a downward variance based on several factors, including the severe impact his 2006 methamphetamine conviction had on both his offense level and criminal history category; the uncounseled nature of his pleas of guilty to the weapons charges; the fact that the average sentence nationwide for unlawful reentry was less than 57 months; and the time he spent in ICE custody prior to trial. The government opposed the variance but urged the district court to impose a sentence at the low end of the Guidelines range. In support of its argument, the government made factual allegations regarding Arroyo's arrest that were not included in the PSI. Specifically, the government

4

said that "less than four months" after his removal following his 2006 conviction for trafficking in methamphetamine, the "Sandy Springs Police Department arrested [Arroyo] when they found him in a bedroom with two bags of methamphetamine, a separate container containing more than 200 grams of methamphetamine and a digital scale." D.E. 26 at 19. Arroyo responded "that the arrest that did not result in a conviction should [not] be considered by th[e] Court in imposing a sentence," because it is "a dangerous path to go down when one begins to treat arrests in the same manner as convictions." D.E. 26 at 23. The government did not present any evidence supporting the contested facts surrounding Arroyo's 2012 arrest.

The district court denied Arroyo's request for a variance and imposed a Guidelines-range sentence of 57 months' imprisonment. Among other things, the district court said:

> I'm sentencing the Defendant at the low end of the guideline range based on the recommendation of the Government; and I'm denying the Defendant's request for a non-guideline sentence because I believe that the Guidelines appropriately take into consideration the aggravating factors that exist in this case, specifically the nature of the Defendant's prior conviction for trafficking in methamphetamine, the fact that the Defendant was then arrested within months of his release from imprisonment in the possession again of more than 200 grams of methamphetamine and drug paraphernalia. And I think that a sentence at the low end of the guideline range is the least sentence that should be imposed under those circumstances . . . . [A]n argument can be made that the sentence should have been at the high end of the guideline range under those facts and circumstances . . . .

5

. . . .

> And I will also say for the record I don't consider this an average case . . . . For a Defendant to be deported after a drug trafficking offense and then to illegally come back to the United States and be <u>again arrested under circumstances indicating he is dealing in drugs is about as bad as it gets</u> short of such a Defendant committing a crime of violence. So for all those reasons, I think the sentence, if anything, is too lenient; but it is what it is.

D.E. 26 at 26-27 (emphasis added).

After his sentence was imposed, but before the sentencing proceeding was completed, Arroyo objected to the district court's "consideration of [the 2012] arrest as though it were a conviction <u>and</u> proof that he engaged in the conduct," stating "I don't believe that the Court has a factual basis to make such a finding, let alone use that finding to justify the sentence imposed in this case." D.E. 26 at 28 (emphasis added). The government offered nothing further in support of the facts underlying Arroyo's 2012 methamphetamine charge. This timely appeal ensued.

## II.

The principal issue is whether the district court violated Arroyo's due process rights at sentencing by considering as facts the circumstances averred by the government surrounding the 2012 <u>nolle prossed</u> arrest -- specifically, that Arroyo was found in a bedroom by the Sandy Springs police department with two bags of methamphetamine, a separate container containing more than 200 grams of methamphetamine and a digital scale. Reading Arroyo's comments in concert, both before and after the imposition of his sentence, we are satisfied that Arroyo

6

objected to the government's assertion of, and the court's reliance on, the underlying facts surrounding his April, 2012 arrest. See United States v. Maurice, 69 F.3d 1553, 1557 (11th Cir. 1995) (per curiam) (finding no waiver "so long as the objection to be preserved and the grounds for the objection are clear to the sentencing court at the conclusion of the hearing").

The suggestion has been made that Arroyo either failed to sufficiently dispute the facts asserted by the government, or that he failed to do so in a timely fashion. As for the first point, a defendant need not expressly state in his objection that a fact to be used at sentencing is "untrue" in order to place the burden on the government to produce evidence in support of that fact. See United States v. Rosales-Bruno, 676 F.3d 1017, 1023 (11th Cir. 2012) (finding that the defendant "clearly objected" to statements in his PSI, placing "on the government the burden of proving [the disputed] facts," where the defendant stated only that he "objects to paragraph 30 which contains the circumstances of the false imprisonment case" (quotation omitted)); see also United States v. Gallo-Chamorro, 48 F.3d 502, 507-08 (11th Cir. 1995) (noting that "general objection[s]" or "objection[s] on other grounds will not suffice," because they prevent the district court from "more fully develop[ing]" the factual record). Here, Arroyo made a specific objection to the lack of a "factual basis" upon which the government's proffer and the district court's finding rested. His objection sufficiently captured the nature of his

7

complaint, alerted the court to the lack of an evidential foundation, and, thus, placed upon the government the burden to produce evidence in support of its claims.

As for the second point, Arroyo's objection was not untimely. More than twenty years ago this court exercised its supervisory power over district courts by requiring them to solicit objections following the imposition of a sentence because "new causes for objection, which the parties could not reasonably have anticipated, may arise during . . . the imposition of sentence." United States v. Jones, 899 F.2d 1097, 1102 (11th Cir. 1990), overruled on other grounds by United States v. Morrill, 984 F.2d 1136 (11th Cir. 1993) (en banc) (per curiam). We found it necessary to allow the parties, "after the court states its factual findings, applies the guidelines, and imposes sentence[,] to object to the district court's ultimate findings of fact and conclusions of law," so that the court may "correct on the spot any error it may have made." Id. (emphasis added). While defense counsel could have been clearer in stating the nature of the objection at the outset, we think it clear that, under Jones, and before the proceedings had concluded, she did timely object to the court relying on these contested factual averments as a basis for Arroyo's sentence without any evidential foundation. We, therefore, review his due process claim de novo. United States v. Weeks, 711 F.3d 1255, 1259 (11th Cir.) (per curiam), cert. denied, 134 S. Ct. 311 (2013).

8

To prevail on his claim, Arroyo must establish two things: (1) that the evidence he challenged at sentencing served as the basis for his sentence; and (2) that the evidence he challenged was materially false or unreliable. United States v. Ghertler, 605 F.3d 1256, 1269 (11th Cir. 2010); United States v. Reme, 738 F.2d 1156, 1167 (11th Cir. 1984). If this burden is met, "the proper remedy is a remand to the district court for a new sentencing hearing." Id.

As for the first prong, the record is clear that the district court based Arroyo's sentence in real measure on its determination that Arroyo engaged in unlawful conduct related to his nolle prossed arrest. When it denied Arroyo's requested variance and imposed his sentence, the district court justified its decision by highlighting the "aggravating factor[]" that he was arrested months after his removal "in the possession again of more than 200 grams of methamphetamine and drug paraphernalia." Moreover, the district court observed that for a defendant to unlawfully reenter the United States after his removal following a drug trafficking conviction and again be "arrested under circumstances indicating he is dealing in drugs is about as bad as it gets short of such a Defendant committing a crime of violence." The district court was deeply troubled by the factual proffer -- and not without good reason. After all, the prosecutor claimed that Arroyo was found in the possession of methamphetamine just months after being deported following his sentence for trafficking in that very same drug. If the government had actually

9

proven its claim, arguably it would demonstrate conduct that could heavily inform several of the § 3553(a) factors, including the need to "afford adequate deterrence to criminal conduct," to "promote respect for the law, . . . to provide just punishment for the offense," and "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(A)-(C).  Plainly, the district court's reliance upon the basic facts supporting Arroyo's 2012 arrest fundamentally affected the calculus when it denied the application for a variance and fashioned his sentence.

That leaves only the question of whether the underlying facts and circumstances surrounding the 2012 arrest, as proffered by the prosecutor and considered by the court, were sufficiently reliable to support the district court's determination that Arroyo actually possessed more than 200 grams of methamphetamine and paraphernalia.  By now the law is abundantly clear that the government had the burden of establishing a reliable evidential foundation.  See Ghertler, 605 F.3d at 1269 (a defendant has a due process right not to be sentenced based on unreliable information); United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006) (per curiam) ("Where a defendant objects to the factual basis of his sentence, the government has the burden of establishing the disputed fact."); United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005), (stating that if a defendant objects to a fact "used in calculating his guideline sentence . . . the government bears the burden of establishing the disputed fact by a preponderance

of the evidence"); United States v. Liss, 265 F.3d 1220, 1230 (11th Cir. 2001) (same); United States v. Patrick, 983 F.2d 206, 208 (11th Cir. 1993) ("The burden of persuasion and production . . . falls upon the government as a matter of due process to establish not only the elements of the offense as defined by the legislature but also each aggravating factor upon which a harsher sentence is to be based."); United States v. Andrews, 953 F.2d 1312, 1319 (11th Cir. 1992) (finding that due process requires relevant sentencing factors be proven by a preponderance).

Indeed, the preponderance burden applies when the sentence is enhanced. See United States v. Washington, 714 F.3d 1358, 1361 (11th Cir. 2013) ("When the government seeks to apply an enhancement . . . over a defendant's factual objection, it has the burden . . . [to] prove the necessary facts by a preponderance of the evidence."). It applies when the sentence constitutes a departure from the Guidelines. See United States v. Stuart, 384 F.3d 1243, 1246 (11th Cir. 2004) (per curiam) (noting that the party seeking a departure bears the burden of proof by a preponderance of the evidence). It also applies when the sentence constitutes a variance from the Guidelines. United States v. Overstreet, 713 F.3d 627, 633-38 (11th Cir.) (finding that an uncharged prior murder could be relied upon to support a variance because it was proven by a preponderance of the evidence), cert. denied, 134 S. Ct. 229 (2013); see also United States v. Klups, 514 F.3d 532, 537 (6th Cir.

11

2008) (same).  And it applies when the sentence falls within the Guidelines range.

See, e.g., United States v. Anderson, 444 F. App'x 420, 420-21 (11th Cir. 2011)

(per curiam) (unpublished) (noting, for a within-Guidelines sentence, that "[w]hen

a court relies upon a disputed fact as the basis for sentencing, the government must

establish the fact by a preponderance of the evidence"); see also United States v.

Castle, 596 F. App'x 422, 426-27 (6th Cir. 2015) (unpublished) (same).[2]

To borrow language from another court, "the same considerations of fairness

and due process apply whenever a sentence is increased.  It is the fact of the

increase based upon inadequate evidence, not the mechanism by which the

increase is accomplished that offends due process."  United States v. Berry, 553

F.3d 273, 284 (3d Cir. 2009).  And when a fact is disputed under the

preponderance of the evidence standard -- in any sentencing context -- our law is

clear that "absent a stipulation or agreement between the parties, an attorney's

---

[2] The dissent observes that "many of the § 3553(a) factors are not susceptible to proof, and a district court often addresses those factors based on the court's experience and judgment."  We agree.  Many considerations at sentencing do not involve facts, while others do.  To use the dissent's example, Arroyo's counsel made several statements during her argument in support of a downward variance.  She claimed, among other things, that Arroyo agreed to reside in a house where drugs were stored prior to his 2005 arrest for trafficking in methamphetamine; that when Arroyo was arrested in 2003, three men were attempting to steal his car; and that he confronted the would-be thieves with a firearm.  All of these statements are concrete, irreducible facts which, if challenged by the government and relied upon by the court, would have required Arroyo to establish them by a preponderance of the evidence.  However, several other sentencing considerations and observations, such as whether Arroyo's criminal history category overstated the seriousness of his criminal conduct, or whether a particular sentence would provide adequate deterrence or would create an unwarranted disparity, are not facts.  Rather, they are arguments that the parties present and that the district court must consider in light of its experience and the record.

12

factual assertions at a sentencing hearing do not constitute evidence that a district court can rely on."  Washington, 714 F.3d at 1361.

Likewise, when a defendant seeks to benefit from a fact at sentencing, he also bears the burden of proof by a preponderance of the evidence.  See, e.g., United States v. Rodriguez De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc) ("The proponent of [a] downward adjustment [including the] defendant . . . always bears the burden . . . by a preponderance of the evidence."); see also Stuart, 384 F.3d at 1246 (same); see also United States v. Valdovinos-Soloache, 309 F.3d 91, 94 (2d Cir. 2002) (per curiam) ("[T]he party seeking to benefit from a particular fact or facts [at sentencing] often bears the burden of persuading the court.").  And, similarly, when the government challenges a defendant's factual assertion, the unsubstantiated statements of the defendant's counsel do not constitute "sufficient evidence for the district court to make findings of fact."  United Sates v. Onefre-Segarra, 126 F.3d 1308, 1310-12 (11th Cir. 1997); see also United States v. Kapelushnik, 306 F.3d 1090, 1095 (11th Cir. 2002).  Simply put, what is good for the goose is good for the gander.[3]

---

[3] The dissent suggests that the defendant in this case did nothing different than the government had done when he proffered facts surrounding his prior convictions during his argument in support of a downward variance.  However, this ignores a critical difference -- namely, that the government did not contest Arroyo's factual averments in any way.  Just as statements in a PSI may serve the purpose of stipulations absent an objection, see Bennett, 472 F.3d at 832 (a sentencing court may rely on statements contained in a PSI with no further evidence if the defendant fails to object), so, too, may unchallenged proffers, Washington, 714 F.3d at 1361

Once Arroyo objected to the government's proffer of the facts surrounding his arrest, the government was left with the burden to prove them by a preponderance of the evidence. Despite bearing that burden, the government failed to introduce any evidence, other than relying on Arroyo's bare arrest record and its ipse dixit assertion, to support its allegation that Arroyo was "arrested when [police] found him in a bedroom with . . . more than 200 grams of methamphetamine." See Washington, 714 F.3d at 1361. The government did not offer to provide a police report, testimony from an officer, an affidavit from an arresting officer or witness, or any other form of evidence to support its averments. Nor, indeed, did the government ever ask the district court to continue the sentencing hearing so that it could gather any evidence in support of its claim, a relatively common and easy practice. See United States v. Dowd, 451 F.3d 1244, 1254-56 (11th Cir. 2006) (affirming a sentence where the district court continued the sentencing hearing to provide the government with the opportunity to gather records); United States v. Smith, 289 F.3d 696, 703 (11th Cir. 2002).

Rather, the government simply argues that Arroyo stipulated to the facts underlying his arrest by failing to properly object to his PSI. But Arroyo's PSI

_____

(noting that an attorney's factual assertions may not be relied upon as the bases for a sentence only "absent a stipulation or agreement" by the parties). The government could have put Arroyo to his burden by disputing his factual averments, but unlike the defendant, did not do so. See, e.g., Kapelushnik, 306 F.3d at 1095; Onefre-Segarra, 126 F.3d at 1310-12.

14

contained no description of the factual circumstances surrounding his arrest -- let alone his possession of more than 200 grams of methamphetamine and drug paraphernalia. Again, Arroyo did not challenge the fact of his arrest. Instead, he challenged the underlying factual claim that he was in the possession of methamphetamine and paraphernalia in a bedroom, a claim that was not presented in the PSI. Because it failed to produce any evidence to substantiate its statement, the government failed to meet its burden of proof.

To be sure, sentencing courts have been granted broad discretion to consider a defendant's background when imposing a sentence -- including conduct that did not result in a conviction. See, e.g., 18 U.S.C. § 3661 ("No limitation sh[ould] be placed on the information concerning the background, character, and conduct of a person . . . which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); U.S.S.G. § 4A1.3(a)(2)(E) (stating that a sentencing court may consider prior criminal conduct that did not result in conviction even when imposing an upward departure). That discretion, however, is not absolute. See, e.g., Pepper v. United States, 131 S. Ct. 1229, 1240 n.8 (2011) (noting that a "sentencing court['s] discretion under § 3661 is subject to constitutional constraints"); Ghertler, 605 F.3d at 1269 ("A defendant has a due process right . . . not to be sentenced based on false or unreliable information."); U.S.S.G. § 6A1.3(a) ("When any factor important to the sentencing determination

is reasonably in dispute . . . the court may consider relevant information without regard to its admissibility . . . provided that the information has sufficient indicia of reliability to support its probable accuracy.").

The problem in this case is that the sentencing court relied on critical facts surrounding Arroyo's 2012 arrest when it fashioned his sentence -- in the face of an objection and in the absence of any proof.  There were no indicia of reliability to support the government's factual assertion.  And despite that absence of any evidential support, the district court still considered that Arroyo was "in the possession again of more than 200 grams of methamphetamine" as an important "aggravating factor[]" when it calculated his sentence.[4]

Accordingly, we are constrained to vacate and remand for resentencing.

**VACATED AND REMANDED.**

---

[4] The dissent offers that the district court will ultimately impose the same sentence based on the same facts.  Although that may turn out to be true, we cannot presume to know the result of the resentencing proceeding.  We do not know whether the government will supply any evidence of the circumstances surrounding Arroyo's prior arrest; what evidence it may offer; what the district court's findings may be; and how all of this will impact its sentencing calculus.  We do, however, know that Arroyo disputed damning facts that the district court heavily relied upon and the government presented no evidence to corroborate its assertions.

16

HINKLE, District Judge, dissenting:

One appellate court has suggested a rule that all would do well to follow: "whatever doesn't make any difference, doesn't matter." McCall v. Finley, 362 S.E.2d 26 (S.C. App. 1987). This case cries out for application of that rule. The majority vacates a sentence and remands for what seems certain to be reimposition of the same sentence based on the same facts. The court does this because it believes the government did not adequately prove facts that the government proffered and the defendant still has not denied. So long as the court's opinion is read narrowly—as the court apparently intends—little harm will come of the decision. Even so, moving the defendant hundreds of miles for resentencing will impose a useless burden on the public, the government, and the defendant himself. Neither side has asked for this. I respectfully dissent.

The basic chronology is undisputed. The defendant Horacio Arroyo-Jaimes illegally entered the United States in 1999. He committed multiple offenses: carrying a concealed weapon and discharging a gun near a public street in 2003 and trafficking in methamphetamine three times in 2005. He served 6 years of a 15-year sentence on the methamphetamine charges. Upon release, he was removed from the United States. This occurred on December 20, 2011.

Mr. Arroyo promptly reentered the United States. He was arrested in Georgia and charged with trafficking in methamphetamine on April 10, 2012, less

than 4 months after his removal. As sometimes happens when a person who has been removed is arrested back in the United States, Mr. Arroyo came to the attention of immigration authorities. This federal case resulted. Mr. Arroyo pleaded guilty to reentering the United States after removal.

The presentence report calculated a guideline range of 57 to 71 months. The presentence report accurately reported the April 2012 arrest "for trafficking in more than 200 grams of methamphetamine," but the report did not further summarize the underlying facts, as a presentence report ordinarily would do. The arrest did not affect the guideline range. The report closed with this statement: "The probation officer has no information concerning the offense or the offender which would warrant a departure from the prescribed sentencing guidelines."

Mr. Arroyo did not serve any objection to this statement. Mr. Arroyo did, however, serve an objection to the guideline calculation. Mr. Arroyo asserted that criminal-history points should not have been assessed on his convictions for carrying a concealed weapon and discharging a gun near a public street, because he was not represented by an attorney and did not validly waive representation. Aware that this would be an issue, the government came to the sentencing hearing prepared to rebut Mr. Arroyo's assertion. The government presented court records showing that Mr. Arroyo signed a waiver of counsel with an interpreter present. The court overruled the objection. This left the guideline range at 57 to 71 months.

18

At that point, Mr. Arroyo asked for a downward variance—a sentence below the guideline range on grounds not authorized by the United States Sentencing Guidelines Manual but instead based on the sentencing factors listed in 18 U.S.C. § 3553(a). One of Mr. Arroyo's assertions was, in effect, that his criminal-history category overstated the seriousness of his actual criminal conduct. Mr. Arroyo presented argument in support of his position, including factual assertions, but introduced no evidence.

Among the factual assertions were some of a kind not meaningfully distinguishable from those later proffered by the government. Mr. Arroyo asserted that his 2005 methamphetamine convictions resulted from "the fact that Mr. Arroyo had agreed to reside in a house where drugs were stored." Mr. Arroyo asserted that his convictions for carrying a concealed weapon and discharging a gun near a public street were accompanied by mitigating circumstances: three men were stealing Mr. Arroyo's car outside a club; Mr. Arroyo confronted the men; security officers did not understand what was happening because Mr. Arroyo spoke only Spanish; when law enforcement officers arrived, they too could not understand Mr. Arroyo and so allowed the thieves to leave in Mr. Arroyo's car. Mr. Arroyo showed no hesitation at all in asking for a variance based on facts that were only proffered, not proved.

19

Mr. Arroyo had given no advance notice of his intent to ask for a below-guideline sentence. That Mr. Arroyo gave no advance notice and made arguments unsupported by evidence was neither improper nor unusual. Proof is required on disputed factual issues that affect calculation of the guideline range or a defendant's eligibility for a departure under the Guidelines Manual, but many of the § 3553(a) factors are not susceptible to proof, and a district court often addresses those factors based on the court's experience and judgment. So far as I am aware, nobody has ever suggested this is improper. Thus, for example, a court may decide whether a sentence would provide adequate deterrence or create unwarranted disparity by applying the court's own experience and judgment; the parties need not present, and a court need not sit through, expert testimony on these subjects every time the parties take conflicting positions. Similarly, a court may apply its experience and judgment when considering whether a criminal-history category overstates the seriousness of the defendant's criminal conduct.

A rule requiring evidence on every factual dispute affecting application of the § 3553(a) factors would dramatically change the law. Under existing law, a district court can properly consider a defendant's allocution; that is why we allow a defendant to allocute. A defendant typically allocutes without being sworn, and the government has no right to cross-examine. If the defendant seems contrite or, in contrast, unrepentant, must the court ignore it? If the defendant in an illegal-

reentry case says, "I came back so I could send money home to my spouse and children," must the court ignore it?  If a defendant proffers letters from friends or family or perhaps the defendant's pastor, must the court ignore them?  On the other side, Congress has given a victim the right to speak at sentencing.  The victim need not be sworn, and the defendant has no right to cross-examine.  If a victim recounts the harm suffered from the defendant's crime, must the court ignore it?

Under existing law, the answer to all these questions is no.  In exercising their sentencing discretion and applying the § 3553(a) factors, district courts routinely consider unsworn inputs.  And properly so.  Partly in recognition of this, the Sentencing Reform Act precluded appellate review of a district court's exercise of discretion in imposing a within-guideline sentence.  This changed with United States v. Booker, 543 U.S. 220 (2005), but not as dramatically as Mr. Arroyo suggests.  The Supreme Court has said that a district court need only give a brief, reasoned explanation of its decision.  See Rita v. United States, 551 U.S. 338, 356 (2007).  Here the district court easily met that standard.

To be sure, there are limits.  The majority cites a case in which the district court concluded, based only an officer's unreliable (indeed questionable) hearsay testimony, that a defendant committed two murders that the defendant denied committing.  See United States v. Reme, 738 F.2d 1156, 1167 (11th Cir. 1984).

21

But that is a far cry from facts proffered after an actual arrest with no assertion that the facts are not true.

So existing law gives a district court considerable latitude in applying the § 3553(a) factors. Mr. Arroyo asked the court to exercise that latitude here. Mr. Arroyo allocuted: he said he accepted responsibility, he apologized, and he said he came back to the United States only because of the severe situation in Mexico. Had the district court refused to allow Mr. Arroyo to make these statements, or had the district court refused to consider the statements because they were unsworn, we surely would have vacated the sentence and sent the case back.

Moreover, as set out above, Mr. Arroyo asked the court to impose a below-guideline sentence based partly on proffered facts unsupported by evidence, including facts about prior convictions. The government did not object to Mr. Arroyo's raising these issues only at sentencing and did not object to the absence of proof. But the government did respond in kind, noting that Mr. Arroyo had been arrested for trafficking methamphetamine fewer than 4 months after his removal, and proffering the underlying facts—much as Mr. Arroyo had proffered the facts underlying his earlier convictions.

The majority faults the government for not proving the facts of the methamphetamine event. At oral argument in this court, the suggestion was made that the arresting officer could have testified. In its opinion, the majority notes that

22

the government did not even introduce the officer's affidavit.  But the government had no advance notice that the methamphetamine event would be an issue—that Mr. Arroyo would ask for a variance and assert his criminal-history category overstated the seriousness of his actual criminal conduct.  No reasonable prosecutor would have subpoenaed an arresting officer to the sentencing hearing under these circumstances.  Nor would a reasonable prosecutor have obtained in advance and brought to court the arresting officer's affidavit.

When the government proffered the facts underlying the arrest—that police found Mr. Arroyo in a bedroom with two bags of methamphetamine, a separate container with more than 200 grams of methamphetamine, and a digital scale—Mr. Arroyo did not deny those facts.  (He still has not denied those facts.)  Instead, Mr. Arroyo, through his attorney, made a statement that was both self-evident and quite beside the point: "[T]he court legally cannot consider an arrest as a conviction . . . ."

This is beside the point because nobody proposed to treat the arrest as a conviction.  In applying the § 3553(a) factors, a court can consider a defendant's entire background, not just criminal convictions.  Conduct that does not result in a conviction (indeed, conduct that is not even illegal) is nonetheless conduct that can properly be considered in determining a sentence.  So if Mr. Arroyo was in a bedroom with a large amount of methamphetamine and a digital scale, the court

23

could properly consider it, with or without an arrest or conviction and even without information on Mr. Arroyo's precise role.  And the court could consider the government's uncontroverted proffer, just as Mr. Arroyo had asked the court to consider his proffer of the facts underlying his convictions.

The court considered the submissions and imposed the sentence: 57 months in custody, the low end of the guideline range.  The court gave only a brief explanation, but as Rita makes clear, a long explanation for a guideline sentence is not required.  The court noted the methamphetamine arrest, precisely as quoted by the majority, but that was not all the court said.  The court also said:

> [I]t's my judgment that under all the facts and circumstances the sentence is a fair and reasonable one considering the sentencing factors set forth in Title 18, U. S. Code, Section 3553(a), specifically the nature and circumstances of the offense, the history and characteristics of the Defendant, the need for the sentence imposed to reflect the seriousness of the offense and promote respect for the law and the need to avoid unwarranted sentencing disparities.

The majority has not criticized this statement, and there is no ground for doing so.  The 57-month sentence was reasonable.

After the sentence was imposed, Mr. Arroyo, through his attorney, asserted for the first time that the court lacked a sufficient factual basis for considering the April 2012 methamphetamine event: "I object to the Court's consideration of an arrest as though it were a conviction and proof that he engaged in the conduct.  I don't believe that the Court has a factual basis to make such a finding, let alone use that finding to justify the sentence

24

imposed in this case." But Mr. Arroyo again did not deny that the government's proffer matched up perfectly with the actual facts.

Perhaps at that point, despite having already imposed the sentence, the court should have reopened the record to allow the government to introduce the police report from the methamphetamine arrest (if the government had it in court, despite having received no advance knowledge this would be an issue). Or perhaps the court should have vacated the sentence it had already imposed and continued the case to give the government a chance to present evidence (in response to Mr. Arroyo's assertion, raised for the first time after the sentence was imposed, that the proffer was insufficient). Vacating the sentence and continuing the hearing at that point—at least if Mr. Arroyo objected, as seems likely in light of his position on this appeal—might itself have been problematic. See 18 U.S.C. § 3582(c) (prohibiting a district court from vacating a sentence of imprisonment "once it has been imposed," with exceptions not applicable here). And in any event, without so much as a hint that the government's proffer was not in fact true, I would not fault the court for going forward as it did.

The majority's response to this dissent is surely correct in some respects. That a sentencing court routinely considers unsworn inputs, as set out above, does not mean the court may determine a disputed issue of historical fact without a reliable basis. Sometimes the government must prove a disputed fact, sometimes even when the fact is relevant to a defendant's request for a variance—a subject on which the defendant

25

ordinarily has the burden of proof. But when the defendant gives no advance notice he will ask for a downward variance based in part on his criminal history, and in response the government makes an apparently reliable proffer about the defendant's criminal history, and the defendant does not deny the proffer's factual accuracy, it is a stretch to say that considering the proffer violates the Due Process Clause.

Even at oral argument in this court, Mr. Arroyo, through his attorney, did not deny the factual accuracy of the government's proffer. When asked whether Mr. Arroyo, who is in custody hundreds of miles from the sentencing court, really wishes to be transported back for what seems certain to be reimposition of the same sentence, Mr. Arroyo's attorney said that is not what Mr. Arroyo seeks. Instead, Mr. Arroyo asks for a resentencing at which the district court is precluded from considering the April 2012 methamphetamine event at all, on the theory that the government had its chance to prove the facts (despite lack of advance notice) and failed to do so. The assertion is plainly unfounded—indeed, not worthy of discussion—and the majority does not even discuss it. But the majority nonetheless remands for resentencing—a result advocated by neither the government nor Mr. Arroyo. Transporting a prisoner hundreds of miles ought not be done without a good reason.

I end where I started: whatever doesn't make any difference, doesn't matter. I respectfully dissent.