NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0617n.06

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

No. 14–5472

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Aug 31, 2015 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| JASON CASTLE, | ) | THE WESTERN DISTRICT OF |
|  | ) | TENNESSEE |
| Defendant-Appellant. | ) |  |
|  | ) |  |

**AMENDED OPINION**

**BEFORE: NORRIS, ROGERS, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Jason Castle was convicted of being a felon in possession of a firearm, 18 U.S.C. § 922(g), and was sentenced to 271 months in prison as an armed career criminal, 18 U.S.C. § 924(e)(1). He appeals both his conviction and sentence, asserting that the Government failed to prove he "possessed" the firearm; that the district court erred in not giving a cautionary instruction to the jury regarding a lay witness's testimony; that a supplemental jury instruction was collateral to the original jury instructions and thus inappropriate; that the district court improperly considered facts underlying a criminal charge pending against him when weighing the 18 U.S.C. § 3553(a) sentencing factors; and that the district court assigned unreasonable weight to a particular § 3553(a) factor resulting in a substantively unreasonable sentence.

On January 13, 2015, we affirmed the district court's decision in its entirety. *United States v. Castle*, 596 F. App'x 422 (6th Cir. 2015). Subsequently, on June 2, 2015, the Supreme

Court decided *Johnson v. United States*, 576 U.S. ---, 135 S. Ct. 2551, 2015 WL 2473450 (2015), holding that the "residual clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutional. Following *Johnson*, the Supreme Court vacated the judgment in the instant case and remanded to us for further consideration in light of *Johnson*. *Castle v. United States*, 135 S. Ct. 2941 (2015). Having considered *Johnson*, we AFFIRM Castle's conviction, and REMAND for resentencing in light of Johnson.

**I.**

On April 17, 2012, three Memphis police officers stopped a white Chevrolet Impala because its windows appeared to violate Tennessee's window-tint law. Tenn. Code Ann. § 55-9-107 (West 2012). Detective Alexander Corder approached the driver, Latasha Webb, while Detective Michael Goedecke approached the passenger, Castle. (R. 93, Trial Tr., PID 839). The third detective, Detective Michael Branning, was the last to arrive on the scene and stood at the rear of the Impala, ready to assist the other detectives as needed. (R. 93, Trial Tr., PID 839). Detective Goedecke asked Castle to exit the vehicle. (R. 93, Trial Tr., PID 840). Once Castle got out of the car, he stood in a "squatted" position that Detective Branning described as "something [he] had never seen before." (R. 93, Trial Tr., PID 840). Castle was "sagging" and Detective Goedecke asked him to pull up his pants prior to doing a pat-down of Castle's waist; Castle complied, but immediately thereafter returned to the unnatural "squatting" position. (R. 93, Trial Tr., PID 840). After not finding any weapons during the pat-down, Detective Goedecke instructed Castle to walk towards the back of the Impala and stand near Detective Branning. (R. 93, Trial Tr., PID 840). However, as soon as Castle took a step towards the rear of the Impala, Detectives Goedecke and Branning heard a metal-sounding "thump" on the ground and saw a gun lying in between Castle's feet. (R. 93, Trial Tr., PID 840). Castle looked down at the gun,

up at the officers, and took off running. (R. 93, Trial Tr., PID 840). He was apprehended within 100 yards of the Impala and placed in custody. (R. 93, Trial Tr., PID 840).

The three detectives who conducted the traffic stop testified at trial, as did Webb and Detective Brandon Champagne, an officer who tried to recover fingerprints from the gun. Each witness testified that the gun did not belong to him or her and that he or she had not placed the gun between Castle's feet. Detective Champagne testified that he did not find fingerprints on the firearm recovered at the scene, but that based on his experience, finding fingerprints on firearms is exceptionally rare. The jury convicted Castle as charged.

Castle was sentenced to 271 months' imprisonment—within the Guidelines range of 235 to 293 months, but 91 months more the statutory-minimum sentence. The district court based the sentence in part on "relevant conduct" consisting of a robbery that occurred two days before the traffic stop.

## II.

### A.

Castle first argues that the Government failed to introduce sufficient evidence to convict him of being a felon in possession of a firearm. A criminal conviction is supported by sufficient evidence if, after viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000). Here, the Government had to prove beyond a reasonable doubt that: (1) Castle was a convicted felon, (2) Castle possessed a firearm, and (3) the firearm Castle possessed had traveled in or affected interstate commerce. 18 U.S.C. § 922(g)(1). Castle stipulated to the first and third elements, so we consider only whether the Government introduced sufficient evidence for the jury to find that Castle

"possessed" the firearm the detectives found between his feet. Actual or constructive possession is sufficient to give rise to criminal liability under § 922(g). *United States v. Campbell*, 549 F.3d 364, 374 (6th Cir. 2008). Actual possession, which is at issue here, requires that Castle have "immediate possession or control" of the firearm. *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977).

There was sufficient evidence to support a finding that Castle actually possessed the firearm recovered from the scene. Castle exited the vehicle in an awkward, squatting position; Detective Branning testified that when Castle moved towards the rear of the car a firearm fell out of his pant leg; and Detective Goedecke testified that, after Castle took one step towards the back of the car, he "heard a metal sound hit the ground, looked down and saw it was a pistol that had fallen out of [Castle's] pants leg." (R. 93, PID 869). Both detectives testified that the firearm introduced at trial was "the firearm that was recovered from the scene that fell out of Mr. Castle's pants leg." (R. 93, PID 872). Finally, each of the three detectives on the scene, as well as Webb, testified that he or she had not planted the firearm that was found between Castle's feet. (R. 93, PID 851, 872, 894, 910). Although Castle offered an alternative theory at trial, the jury was not obliged to accept the theory.

Given the record as a whole, specifically the detectives' testimony, a rational trier of fact could have found beyond a reasonable doubt that Castle "possessed" the firearm recovered at the traffic stop. Thus, the Government introduced sufficient evidence to convict Castle under § 922(g).

**B.**

Castle next argues that the district court erred in permitting "Detective Champagne to testify as [] both a fact and expert witness without giving a cautionary instruction." (Appellant Br. 31). We review a district court's evidentiary rulings, including rulings on witness testimony under Federal Rules of Evidence 701 and 702, for an abuse of discretion. *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007). A district court abuses its discretion when it commits a legal error or makes clearly erroneous findings of fact. *United States v. Ford*, 761 F.3d 641, 651 (6th Cir. 2014). We will reverse an evidentiary ruling only when a defendant's substantial rights were affected by the evidence's admission. *White*, 492 F.3d at 406 (citing Fed. R. Evid. 103(a)). Thus, "[e]ven when the district court has abused its discretion in admitting evidence, we do not reverse a conviction if the error is harmless, meaning that it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013) (quoting *United States v. Lopez-Medina*, 461 F.3d 724, 741 (6th Cir. 2006)).

Detective Champagne testified that he could not recover any "prints of value"—prints that allow the police to affirmatively identify someone—from the firearm found at the traffic stop. (R. 93, Trial Tr., PID 920). However, he went on to explain that in his career as a detective, it is exceptionally rare to recover fingerprints off of firearms, estimating that in the approximately 1,500 fingerprint-on-firearm cases in which he has been involved, he has found at most four prints of value. (R. 93, Trial Tr., PID 922). Over Castle's objection, the district court determined that Detective Champagne was testifying as a lay witness, not as an expert.

To be sure, Detective Champagne's testimony stemmed from his personal knowledge, but it was not of the sort typically thought of as lay testimony. *See* Fed. R. Evid. 701 (stating

that testimony based on "specialized knowledge" is not proper for a lay witness). In any event, we need not decide whether the jury should have been given a cautionary instruction, because any error was harmless. The Government needed to prove only that Castle possessed a firearm within the meaning of § 922(g). Two detectives testified that a firearm fell from Castle's pants, and a third testified that he recovered a weapon from the Impala's passenger side. Each of the witnesses confirmed that the gun did not belong to them and that they had not placed it between Castle's feet. Detective Champagne's testimony likely had little effect.

## C.

Castle next argues that the district court erred in giving a supplemental jury instruction in response to a question from the jury regarding the meaning of "possession" because the supplemental instruction was cumulative to the original jury instructions. (Appellant Br. 39). However, Castle does not argue that the supplemental instruction contained an inaccurate statement of law. We review the district court's response to a question from the jury for an abuse of discretion. *United States v. Khalil*, 279 F.3d 358, 367 (6th Cir. 2002) (quoting *United States v. August*, 984 F.2d 705, 712 (6th Cir. 1992)). Under the "high standard" applicable to this sort of challenge, we will reverse a conviction only if the jury instructions, taken as a whole, were "'confusing, misleading, and prejudicial.'" *United States v. Young*, 553 F.3d 1035, 1050 (6th Cir. 2009) (quoting *United States v. Clark*, 988 F.2d 1459, 1468 (6th Cir. 1993)).

Initially, the district court gave a jury instruction that closely parallels the Sixth Circuit's proposed pattern-jury instruction for "possession." *See* Sixth Circuit Pattern Jury Instructions, § 2.10A. Nevertheless, during deliberations, the jury asked for an "expanded definition and examples of possession and control." (R. 69, Jury Supp. Inst., PID 417). The district court then gave the following supplemental instruction:

> Regarding possession, the [original] instructions on pages 19 and 20 of the instructions define that element of the crime charged. You should use those instructions.
>
> To further assist you, I will now provide some additional clarification to add to and supplement the definition of possession that you already have.
>
> If you believe beyond a reasonable doubt that the defendant physically held the Smith & Wesson .38 caliber handgun that is Exhibit 4, then he possessed it within the meaning of the law. No specific amount of time of possession is required. If a person physically controls an item and knows that he does, even for a few seconds, he possesses it within the meaning of the law.
>
> A person has possession of something if the person knows of its presence and has physical control of it. Therefore, a person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it. Possession under [§] 922(g) requires that a person know that the item is a firearm and know that he has control of it in order for the person to possess it within the meaning of the court's instructions.
>
> Remember, you may not single out, or disregard, any of the Court's instructions on the law. You must follow all of the Court's instructions on the law, taking each in the light of all the others.

(R. 69, Jury Supp. Inst., PID 417–18).

The district court's supplemental instruction was not misleading, confusing, or prejudicial, and Castle does not challenge the substance of the instruction. At most, the district court clarified how possession would apply to this case, by, for example, replacing general terms with terms specific to the case. The proper interpretation of "possession" was integral to the sole issue in dispute, and nothing the district court provided distracted the jury from its ultimate responsibility or presented it with collateral information. *See United States v. Washington*, 702 F.3d 886, 895 (6th Cir. 2012) (stating that a district court should refrain from answering jury questions regarding collateral or irrelevant issues); *United States v. Fisher*, 648 F.3d 442, 447 (6th Cir. 2011) (same). Further, each aspect of the supplemental instruction was an accurate statement of the law, and as a whole responsive to the jury's request for an "expanded" definition

of possession, which is undoubtedly "an important legal issue." *See United States v. Nunez*, 889 F.2d 1564, 1567 (6th Cir. 1989) (reversing a district court's decision to *not* provide a supplemental instruction because the jury's question regarded "an important legal issue"). Finally, in two separate paragraphs, the district court explained to the jury that it should use the original instructions and that it could "not single out, or disregard" any of the original instructions. *See Young*, 553 F.3d at 1050 (stating that we look at the jury instructions *as a whole* when determining whether they were inappropriate). We find no error.

### III.

Castle also challenges various aspects of his sentence. Although we do not believe that the district court erred in the manner argued by Castle, *see Castle*, 596 F. App'x at 426–28, we remand for resentencing given that the district court "relied on the armed-career-criminal minimum sentence to find that Castle deserved 'at least a 15-year sentence,'"[1] *id*. at 428.

Post-*Johnson*, an individual cannot be considered an "armed career criminal" due to past "violent felony" convictions unless the qualifying crimes involved an element of force; were burglary, arson, or extortion; or involved the use of an explosive. *Johnson*, 2015 WL 2473450 at *11 ("Today's decision [that the residual clause of § 924(e)(2)(B) is unconstitutional] does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony."). In this case, the Presentence Investigation Report recommended that the district court find Castle an armed career criminal due to his three prior Tennessee Class E felony convictions for "Intentionally Evading Arrest in a Motor Vehicle." The district court overruled Castle's objection, relying on *United States v. Doyle*, 678 F.3d 429 (6th Cir. 2012), which held that a Tennessee Class E felony conviction for evading arrest

---

[1] There is no dispute that Castle preserved the right to challenge the constitutionality of the residual clause below.

constitutes a "violent felony" under the residual clause. Thus, we REMAND to the district court for resentencing in light of *Johnson*.

## IV.

For the foregoing reasons, we AFFIRM Castle's conviction and REMAND for resentencing in light of Johnson.